OPINION OF THE COURT
Herman Cahn, J.
This motion revolves around the enforceability of rule 8 (a) *580 of the Commercial Arbitration Rules of the American Arbitration Association (AAA) — granting to the arbitrator the power to rule on his or her own jurisdiction. Apparently, the rule has not yet been discussed by the New York courts. It has been enforced by several United States District Courts. This court follows those cases, and enforces the rule.
Petitioners move to stay arbitration (CPLR 7503 [b]) to the extent of severing the claims made in paragraph 3, subsections i through l and paragraph 4 of the demand for arbitration. In a simultaneously commenced related proceeding (Matter of RD Mgt. Corp. v Samuels, NY County, Index No. 116755/02), petitioners move to stay arbitration of the claims made in paragraph 2, subsections k through o of the demand for arbitration.
Petitioners in both proceedings, except for RD Management Corp. (RD), are general or limited partners in one or both of two real estate partnerships, Realty Equity Limited Partnership (RELP) and FW Associates (FW). Respondent Walter R. Samuels is a general partner in both RELP and FW. RELP and FW are engaged in acquiring, developing, and operating real property, primarily shopping centers, throughout the continental United States and Puerto Rico. RD is a corporation formed by the families that own RELP and FW to manage the partnership property.
The rights and obligations of the partners in RELP and FW are governed by partnership agreements. Each partnership agreement contains similarly-worded clauses providing for “any dispute” among the parties to be resolved by arbitration under the Rules of the American Arbitration Association. RD is not a party to either agreement.
In May 2002, RD commenced a RICO action against Samuels, his wife and a family corporation, alleging that they had accepted kickbacks from various brokers through whom RD procured liability insurance. On July 8, 2002, Samuels served separate arbitration demands against his partners in the RELP and FW partnerships pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Some of the claims asserted — the ones sought to be stayed through this motion — relate to the RD insurance dispute, seeking, inter alia, a declaration that the RICO action was commenced improperly and without authorization. Another group of claims, also the subject of this motion, accuse petitioner Furman of diverting *581 employees from RD and causing RD to pay him excessivé compensation. However, Samuels does not seek arbitration against RD itself.
The motions are denied, without prejudice to renewal before the arbitrator. Under CPLR 7503 (a), “[w]here there is no substantial question whether a valid agreement was made or complied with * * * the court shall direct the parties to arbitrate.” The court’s inquiry is at an end once it appears that the subject of the dispute is reasonably related to the subject matter of the underlying contract governed by a broad arbitration clause (Information Sciences v Mohawk Data Science Corp., 43 NY2d 918 [1978]; Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91 [1975]).
Although the issue of the arbitrability of a particular claim is ordinarily an issue for judicial determination (Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594 [1997]), “[a]n important legal and practical exception has evolved which recognizes, respects and enforces a commitment by the parties, nevertheless, to arbitrate even that issue when they clearly and unmistakably so provide” (Matter of Smith Barney Sherson v Sacharow, 91 NY2d 39, 46 [1997]). This proceeding is governed by the Federal Arbitration Act (9 USC § 1 et seq.). Normally, the act will apply only if the subject of the arbitrable dispute has a substantial effect on interstate commerce. Accordingly, an arbitrable dispute regarding a lease of Manhattan building space (Tauber & Assoc. I v American Mgt. Assn., 304 AD2d 413 [1st Dept 2003]), and regarding the termination of a manager of buildings within New York City (Wien & Malkin v Helmsley-Spear, Inc., 300 AD2d 32 [1st Dept 2002]), are not within the purview of the act.
In these matters, however, the partnerships which are at the heart of the disputes were established as vehicles for investing in commercial real estate throughout the United States and Puerto Rico (Murray affidavit 3; Samuels affidavit 5). Therefore, the partnership agreements “contemplate or facilitate * * * involvement in interstate commerce” (Tauber & Assoc. I, 304 AD2d 413, supra) and, thus, bring the act into play.
Here, the parties have expressly agreed to proceed under the Commercial Arbitration Rules of the American Arbitration Association, which grant the arbitrator the power to decide the scope of the arbitration clause. Rule 8 (a) of the AAA Commercial Arbitration Rules provides that “[t]he arbitrator shall *582 have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.”* This has been construed as a delegation of the issue of arbitrability to the arbitrator (see, Sleeper Farms v Agway, Inc., 211 F Supp 2d 197 [D Me 2002]; Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v MedPartners, Inc., 203 FRD 677 [SD Fla 2001], affd 312 F3d 1349 [11th Cir 2002]; Professional Sports Tickets & Tours v Bridgeview Bank Group, 2001 WL 1090148, 2001 US Dist LEXIS 14402 [ED Pa, Sept. 13, 2001]). Accordingly, any questions regarding the arbitrability of the claims relating to RD must be resolved by the arbitration panel.
Accordingly, it is ordered that the motion to stay arbitration is denied.

 Although rule 8 (a) was enacted after the parties executed the partnership agreements in 1984, it was in effect at the time the demands for arbitration were served in 2002. Under rule 1 of the Commercial Arbitration Rules (eff Feb. Í, 1984), the parties agreed that “[t]hese Rules and any amendment thereof shall apply in the form obtaining at the time the arbitration is initiated.”