Filed 6/17/14

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| KEEYA MALONE,<br><br>    Plaintiff and Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES,<br><br>    Respondent;<br><br>CALIFORNIA BANK & TRUST,<br><br>    Defendant and Real Party in Interest. | B253891<br><br>(Los Angeles County Super. Ct. No. BC502002) |


ORIGINAL PROCEEDINGS in mandate.  William F. Highberger, Judge. Petition denied.

R. Rex Parris Law Firm, R. Rex Parris, Alexander R. Wheeler, Kitty Szeto and John M. Bickford; Lawyers for Justice and Edwin Aiwazian for Plaintiff and Petitioner.

No appearance for Respondent.

Reed Smith, Thomas E. Hill and Mara Matheke for Defendant and Real Party in Interest.

Plaintiff and petitioner Keeya Malone brought the instant wage and hour action against her former employer, defendant and real party in interest California Bank & Trust (CB&T).[1]  CB&T moved to compel arbitration, pursuant to a clause in its employee handbook.  Malone opposed the petition arguing, inter alia, that the arbitration agreement was unconscionable.  CB&T responded that the arbitration agreement contained a so-called "delegation clause," providing that issues relating to the enforceability of the arbitration agreement were themselves delegated to the arbitrator for resolution.  The dispute in this case then turned to the issue of whether the delegation clause itself was unconscionable.  Malone relied exclusively on three cases which held such clauses to be unenforceable:  *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138 (*Murphy*); *Bruni v. Didion* (2008) 160 Cal.App.4th 1272 (*Bruni*); and *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494 (*Ontiveros*).

The trial court, however, concluded that *Murphy*, *Bruni*, and *Ontiveros* were no longer good law after the United States Supreme Court's subsequent resolution of *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740] (*Concepcion*), which had overruled a line of California authority considered impermissibly hostile to arbitration.  The trial court therefore held the delegation clause enforceable, and granted

---

[1]     CB&T takes the position that it was not actually Malone's employer, and that she was instead employed by Zions Management Services Company, a wholly owned subsidiary of a parent corporation which also owned CB&T.  The precise identity of Malone's employer is not at issue in this writ proceeding.

2

the petition to compel arbitration – leaving it to the arbitrator to resolve Malone's claim that the arbitration agreement (as a whole) was unconscionable.

Malone filed a petition for writ of mandate and we issued an order to show cause, in order to address the issue of the continuing viability of *Murphy*, *Bruni*, and *Ontiveros*. We conclude that a portion of the rationale underlying these cases is no longer viable, and that what remains of the cases is an insufficient basis on which to establish unconscionability of the delegation clause in the instant matter. We therefore deny Malone's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Malone's employment with defendant, as a "wires specialist," began in July 2007. A 2007 employee handbook, which Malone allegedly accepted, contains an arbitration clause. It provides for mandatory binding arbitration of "[a]ny legal controversy or claim arising out of" Malone's employment. Only five types of claims are excepted: (1) claims for workers' compensation benefits; (2) claims for unemployment insurance payments; (3) claims by employees who have executed a separate agreement subjecting their claims to arbitration by the National Association of Securities Dealers; (4) claims against an employee that require CB&T to file a criminal reference form after which the government can prosecute the employee; and (5) claims that have previously been resolved by the parties, as evidenced by the parties executing and acting upon a separation agreement and/or release.[2]

---

[2]      We note, in passing, that CB&T suggested that Malone intentionally named CB&T as a defendant, rather than her employer, Zions Management Services Company,

3

The arbitration agreement specifically stated that it was made pursuant to, and was governed by, the Federal Arbitration Act (FAA). Further, the arbitration agreement included a delegation clause, providing: "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement."[3]

Malone's employment with CB&T terminated in November 2010. On March 1, 2013, she brought the instant wage and hour action against CB&T, alleging ten causes of action for violation of the Labor Code and unfair business practices. Malone sought to pursue a class action on behalf of similarly situated employees who worked for CB&T at any time during the four years preceding the filing of her complaint.

CB&T moved to compel arbitration, relying on the arbitration agreement in its employee handbook. As that agreement provided that there would be no class arbitration, CB&T moved to compel Malone to arbitrate her claims alone, in an individual arbitration proceeding.

_____

because she had entered into a severance agreement and full release of all claims with the latter entity when her employment terminated. The parties made no argument, however, that such a release would have any effect on the arbitrability of Malone's claims in the instant action.

[3] Strictly speaking, this was not the agreement's sole delegation clause. The agreement also provided that the parties would arbitrate "pursuant to . . . the code of procedures of the American Arbitration Association (AAA)." The AAA's Employment Arbitration Rules and Mediation Procedures include the provision that, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Thus, it appears that a second delegation clause was incorporated into the agreement by reference to the applicable AAA rules.

Malone opposed the motion to compel arbitration on several bases, including that the arbitration agreement was unconscionable and therefore unenforceable. Malone argued that four elements of the arbitration agreement, specifically including the delegation clause, rendered it unconscionable.[4]

The motion to compel arbitration was fully briefed. At a hearing on August 9, 2013, the trial court indicated that its tentative opinion was to grant the motion and compel arbitration. Malone argued that the trial court was required to consider her argument that the delegation clause *itself* was unconscionable before enforcing the agreement and delegating the other issues of enforceability to the arbitrator. The court, which had not specifically focused on that issue, agreed and asked Malone for the relevant standard to apply in determining whether the delegation clause was unconscionable; Malone's counsel relied on *Murphy*, *Bruni*, and *Ontiveros*. The court noted that all three of those cases predated *Concepcion*, "so they have to be approached guardedly," but indicated an intention to review them. The court sought additional briefing on the issue of whether those cases survived *Concepcion*.

---

[4]    As we shall discuss, there is a distinction between a claim that a delegation clause is unconscionable and a claim that the entire contract is unconscionable. In this case, Malone made both claims; that is, she argued: (1) the delegation clause was unconscionable and (2) the delegation clause's unconscionability combined with other unconscionable clauses to render the entire agreement unconscionable. At one point, CB&T argued that Malone could only pursue an unconscionability challenge to the delegation clause if that argument was "analytically distinct" from her unconscionability challenge to the agreement as a whole, and suggested that Malone had not made such a distinct challenge. We disagree. Malone argued that the delegation clause was unconscionable based on *Murphy*, *Bruni*, and *Ontiveros*. While Malone argued that the arbitration agreement contained several other substantively unconscionable clauses, her challenge to the delegation clause also stood alone.

5

After the supplemental briefs were filed, the California Supreme Court decided *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (*Sonic-Calabasas*), the first California Supreme Court case to discuss the impact of *Concepcion* on California arbitration law. The parties were invited to file further supplemental briefs discussing the effect, if any, of *Sonic-Calabasas* on the issue. In her supplemental briefing, Malone continued to argue that *Murphy*, *Bruni*, and *Ontiveros* governed. She emphasized, however, that she was not arguing that all delegation clauses are per se unconscionable. Instead, she was arguing that the delegation clause *in this case* was unconscionable, in light of the totality of the circumstances. She suggested that a delegation clause could be enforceable if, for example, it had been negotiated at arm's length. Similarly, she took the position that a delegation clause might not be unconscionable if it delegated the decisionmaking on issues of enforceability to a different arbitrator than the one who would be deciding the merits of the dispute.

Further argument was held. The trial court concluded that *Sonic-Calabasas* held that per se unconscionability rules were preempted by the FAA; unconscionability arguments could only succeed on a case-specific basis. Malone did not disagree, but argued that *Murphy*, *Bruni*, and *Ontiveros* controlled the result in this case because the facts in those cases were substantially similar to the facts in the instant matter.[5]

---

[5]     Interestingly, Malone argued that the facts in *Murphy*, *Bruni*, and *Ontiveros* would be substantially similar to the facts in "any other case with this boiler[]plate delegation clause." Malone made no arguments specific to the facts of this case; she did not attempt to make a factual showing that enforcing the delegation clause *in this case* would result in unfairness to her. In other words, while Malone expressly stated that she was not arguing for a categorical rule against delegation clauses, Malone appeared

6

Thereafter, the trial court issued its ruling enforcing the delegation clause and compelling arbitration. The court clarified that it was addressing, and rejecting, Malone's unconscionability argument *only* to the extent it applied to the delegation clause. The arbitrator was to address Malone's argument that the arbitration agreement was unconscionable as a whole, and any other challenges to the agreement's existence and enforceability. At Malone's request, the court certified its order for interlocutory review. (Code Civ. Proc., § 166.1.)

Malone filed a petition for writ of mandate challenging the court's order. We issued an order to show cause.

### *ISSUE IN THE INSTANT WRIT PROCEEDING*

The sole issue before us is whether the trial court erred in enforcing the delegation clause in the arbitration agreement, and thus granting the motion to compel arbitration. The only basis for non-enforcement of the delegation clause pursued by Malone is that such clause is itself unconscionable; the trial court concluded that it was not. We will first discuss the application of unconscionability law to delegation clauses in California; second, we will turn to the issue of whether this application of the unconscionability doctrine is preempted by the FAA.

---

to be arguing for a categorical rule against boilerplate delegation clauses similar to this one.

7

## DISCUSSION

1.    *Delegation Clauses*

      a.    *Severability*

A delegation clause requires issues of interpretation and enforceability of an arbitration agreement to be resolved by the arbitrator. Delegation clauses have the potential to create problems of circularity. For example, suppose an arbitration agreement delegates the issue of enforceability to the arbitrator. If the arbitrator concludes that the arbitration agreement is, in fact, not enforceable, this would mean that the entire agreement, *including the delegation clause*, is unenforceable – a finding that would undermine the arbitrator's jurisdiction to make that finding in the first place. For this reason, courts have treated the delegation clause as a separate agreement to arbitrate solely the issues of enforceability. In other words, courts have *separately* enforced an enforceable delegation clause; thus, it has been held that whether the arbitration agreement as a whole is ultimately held to be unenforceable will have no bearing on the enforcement of the delegation clause itself. (*Bruni, supra,* 160 Cal.App.4th at p. 1287.)

For this reason, when a party is claiming that an arbitration agreement is unenforceable, it is important to determine whether the party is making a specific challenge to the enforceability of the delegation clause or is simply arguing that the agreement as a whole is unenforceable. If the party's challenge is directed to the agreement as a whole – even if it applies equally to the delegation clause – the delegation clause is severed out and enforced; thus, the arbitrator, not the court, will

8

determine whether the agreement is enforceable. In contrast, if the party is making a specific challenge to the delegation clause, the court must determine whether the delegation clause itself may be enforced (and can only delegate the general issue of enforceability to the arbitrator if it first determines the delegation clause is enforceable). (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, ___ [130 S.Ct. 2772, 2778].)

In the instant case, Malone argued both that the arbitration agreement was unconscionable generally, and that the delegation clause was unconscionable under *Murphy*, *Bruni*, and *Ontiveros*. As Malone made a specific challenge to the delegation clause, the trial court was required to resolve the merits of that challenge. The trial court did so, following appropriate procedure.

    b.  *Clear and Unmistakable*

Both the United States Supreme Court and California courts agree that, in order for a delegation clause to be enforceable, it must be clear and unmistakable. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944-945; *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 709.) The reason for this is that the issue of who (arbitrator or court) should decide arbitrability "is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citations.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they

9

reasonably would have thought a judge, not an arbitrator, would decide." (*First Options of Chicago, Inc. v. Kaplan, supra,* 514 U.S. at p. 945.)

In the instant case, the delegation clause provided, "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." There is no suggestion that this language was not sufficiently clear and unmistakable. Thus, the delegation clause was enforceable, unless it was unconscionable.

### c. *Unconscionability*

Before addressing the application of unconscionability law to delegation clauses specifically, an overview of the doctrine of unconscionability is helpful.

### (1) *Overview*

"Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246.) " ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." ' [Citation.]" (*Id*. at p. 247.) When the contract is a contract of adhesion imposed and drafted by the party with superior bargaining power, the adhesive nature of the contract is "evidence of some degree of procedural unconscionability." (*Sanchez v. Carmax Auto Superstores California, LLC*

(2014) 224 Cal.App.4th 398, 403.)  However, the fact that an agreement is adhesive is not, alone, sufficient to render it unconscionable.  (*Id*. at p. 402.)

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.]"  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra,* 55 Cal.4th at p. 246.)

"The party resisting arbitration bears the burden of proving unconscionability. [Citations.]  Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." '  [Citation.]  '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'  [Citation.]"  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra,* 55 Cal.4th at p. 247.)  "Where there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high."  (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796.)

"All of these [unconscionability] formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party'

11

[citation]. These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' [Citation.]"[6] (*Sonic-Calabasas, supra,* 57 Cal.4th at p. 1145.)

"Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence." (*Chin v. Advanced Fresh Concepts Franchise Corp., supra,* 194 Cal.App.4th at p. 708.) In this case, the parties agree that there are no factual disputes regarding the delegation clause and de novo review therefore applies.[7]

(2) *Unconscionability of Delegation Clauses*

Malone relies heavily on *Murphy*, *Bruni*, and *Ontiveros* for her argument that the delegation clause is unconscionable. We briefly discuss each case separately.

---

[6] In a concurring opinion in *Sonic-Calabasas*, Justice Corrigan suggested that the court should better articulate the unconscionability standard. (*Sonic-Calabasas, supra,* 57 Cal.4th at p. 1172.) The majority concluded that the issue had not been presented by the case, but took the position that there was no distinction between the " 'shock the conscience' " formulation and the " 'unreasonably one-sided' " one. (*Id*. at pp. 1159-1160.)

[7] CB&T argued for the application of substantial evidence review to the issue of whether Malone actually consented to the arbitration agreement. Although Malone opposed the motion to compel on the basis that she had not consented, she did not raise the issue in her writ petition.

12

In *Murphy*, the delegation clause specifically provided that arbitrable claims included " 'any assertion by you or us that this Agreement is substantively or procedurally unconscionable.' " (*Murphy, supra,* 156 Cal.App.4th at p. 142.) In a very brief discussion, the *Murphy* court found this clause to be unconscionable. First, it noted that the clause appeared in a contract of adhesion, and that it was outside the reasonable expectation of the parties, as parties would not ordinarily expect an arbitrator to determine his or her own jurisdiction. (*Id.* at p. 145.) Second, the *Murphy* court concluded that the delegation clause was not bilateral. It explained, "The agreement is facially mutual insofar as it covers assertions of unconscionability by 'you or us' but, as plaintiff points out, the provision is entirely one sided because defendant cannot be expected to claim that it drafted an unconscionable agreement." (*Ibid.*)

The next case to address an argument that a delegation clause was unconscionable was *Bruni*.[8] In *Bruni*, the delegation clause did not refer exclusively to claims of unconscionability as did the clause in *Murphy*; instead, the clause provided, " 'Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including[,] without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches,

---

[8]     Strictly speaking, *Bruni* was not focused on the potential unconscionability of a delegation clause. Instead, *Bruni* addressed whether the court could determine the unconscionability of the agreement as a whole, despite the existence of a delegation clause, when the plaintiffs argued that they had never knowingly agreed to arbitrate anything. The court concluded that this was an inquiry for the court, not the arbitrator. (*Bruni, supra,* 160 Cal.App.4th at pp. 1290-1291.) The court's subsequent unconscionability analysis focused on the entirety of the arbitration provision, not merely the delegation clause. (*Id.* at pp. 1294-1295.)

13

shall be decided by the arbitrator.' " (*Bruni, supra,* 160 Cal.App.4th at p. 1281.) The

*Bruni* court concluded that, as the contract was a contract of adhesion, and the

delegation clause was beyond the plaintiffs' reasonable expectations, the clause was

unconscionable. (*Id*. at p. 1295.)

The third case to discuss the issue is *Ontiveros*.[9] In *Ontiveros*, the arbitration

clause provided that the arbitrator had exclusive authority to resolve any dispute

regarding " 'interpretation, applicability, enforceability or formation of this Agreement,

including but not limited to any claim that all or part of this Agreement is void or

voidable.' " (*Ontiveros, supra,* 164 Cal.App.4th at p. 500.) The *Ontiveros* court

concluded the clause was unconscionable. First, it noted the contract was a contract of

adhesion. (*Id*. at p. 505.) It then followed *Murphy* and explained: "We have a genuine

concern about the potential for the inequitable use of such arbitration provisions in

areas, such as employment, where the parties are not at arm's length and do not have

equal bargaining power. In such situations, in which one party tends to be a repeat

player, the arbitrator has a unique self-interest in deciding that a dispute is arbitrable."

(*Ibid.*) The court further explained, "Indeed, an arbitrator who finds an arbitration

agreement unconscionable would not only have nothing further to arbitrate, but could

---

[9]    *Ontiveros* is not the final California case to address the matter, although it may be the most comprehensive. Several subsequent cases have reached the same issue, and have simply followed, or adopted the reasoning of, *Murphy*, *Bruni*, and *Ontiveros*. (See, e.g., *Ajamian v. CantorCO2e, L.P.*, *supra,* 203 Cal.App.4th 771, 794-795, fn. 11; *Chin v. Advanced Fresh Concepts Franchise Corp., supra,* 194 Cal.App.4th 704, 710-711.) More recently, *Tiri v. Lucky Chances, Inc.* (May 15, 2014, A136675) ___ Cal.App.4th ___ [2014 D.A.R. 6103] concluded, as we do, that *Murphy* and *Ontiveros* have been undermined by more recent authority.

also reasonably expect to obtain less business in the future, at least from the provider in question." (*Id*. at pp. 506-507.)

Considered together, *Murphy*, *Bruni*, and *Ontiveros* rely on three purported qualities of delegation clauses for their conclusion that the clauses are substantively unconscionable: (1) a delegation clause is outside the reasonable expectation of the parties; (2) delegation clauses are not bilateral; and (3) the arbitrator has a self-interest in finding the agreement arbitrable – both so that the arbitrator can be compensated for arbitrating the dispute on the merits, and so that the arbitrator will be considered for further arbitration assignments. As we shall now discuss, these three grounds do not lead to the conclusion that the delegation clause in the instant matter is unconscionable. Taken in reverse order, the third ground (the arbitrator's financial self-interest) is preempted by the FAA; the second ground (the delegation clause lacks bilaterality) is simply inapplicable to the delegation clause in the instant case; and the first ground (the delegation clause is outside the reasonable expectation of the parties), standing alone, is not sufficient to render the clause unconscionable.

Because our discussion of FAA preemption is necessarily lengthy, we begin with the second ground: that the delegation clause lacks bilaterality. This factor was first discussed in *Murphy*, where the delegation clause specifically provided that it applied to " 'any assertion by you or us that this Agreement is substantively or procedurally unconscionable.' " (*Murphy, supra,* 156 Cal.App.4th at p. 142.) The *Murphy* court concluded that, despite the fact that this clause referred to assertions of unconscionability by both parties, the clause was, in effect, unilateral, as the party

15

which drafted an agreement would not assert that it had drafted an unconscionable one. Yet, this factor is not present in the delegation clause at issue in this case. CB&T's delegation clause does not delegate *only* the issue of unconscionability; it delegates *all* issues of interpretation, applicability, and enforceability of the agreement. No argument can be made that only an employee would raise an issue of "interpretation, applicability, or enforceability."[10] Perhaps CB&T would wish to argue that the instant matter is excepted from arbitration because Malone previously executed a settlement agreement. (See fn. 2, *ante*.) This issue would be delegated to the arbitrator. Thus, it is clear that the delegation clause is not one-sided, and it is therefore not substantively unconscionable due to a lack of bilaterality.[11]

We next turn to the issue of FAA preemption. Specifically, the FAA poses limits on the application of state contractual defenses, such as unconscionability. We must consider whether the FAA preempts a finding that a delegation clause is substantively unconscionable due to the purported fact that the clause gives rise to an inference of biased decision-making by arbitrators acting in their own financial interests.[12]

---

[10]    In the instant case, Malone argues only that the delegation clause is one-sided because "only an employee would challenge the arbitration agreement as being unconscionable." But the delegation clause in the instant case is not limited to unconscionability; indeed, it does not even *mention* unconscionability.

[11]    The *Ontiveros* court adopted the rationale of *Murphy* on this issue (*Ontiveros, supra,* 164 Cal.App.4th at pp. 504-505), without ever considering the issue that the language of the *Ontiveros* delegation clause was not limited to unconscionability, and therefore would have required a different result on the issue of bilaterality.

[12]    We note that the parties, and the trial court, approached this issue as the question of whether *Murphy*, *Bruni*, and *Ontiveros* have been impliedly overruled by

16

d.     *FAA Preemption of State Unconscionability Law*

The FAA was enacted in 1925.  (*Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 24.)  "Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  (*Ibid.*)

Under section 2 of the FAA, "A written provision in any . . . contract evidencing a transaction involving commerce[13] to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)  The United States Supreme Court explained: " 'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'  [Citation.]

_____

*Concepcion.*  This is not entirely accurate.  *Murphy*, *Bruni*, and *Ontiveros* did not rely on a potentially-outdated view of FAA preemption; the three cases never even considered the issue of FAA preemption.  As the issue of FAA preemption was not raised in those cases, the courts did not have an opportunity to discuss whether it barred their application of the unconscionability doctrine.

[13]     The United States Supreme Court has taken a broad view of the "commerce" language defining the scope of the FAA, concluding that its reach is as broad as the commerce clause allows.  (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 268.)  The arbitration agreement in the instant case provided that it was governed by the FAA because "employment with [CB&T] involves interstate commerce."  There is no suggestion that this is untrue.

17

Enacted pursuant to the Commerce Clause [citation], this body of substantive law is enforceable in both state and federal courts. [Citation.] As we stated in [citation], '[i]n enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' [Citation.] 'Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.' [Citation.]" (*Perry v. Thomas* (1987) 482 U.S. 483, 489.)

Section 2 of the FAA contains a "saving clause" which "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. [Citation.]" (*Concepcion, supra,* 131 S.Ct. at p. 1746.) Section 2 "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' [Citation.] What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent." (*Allied-Bruce Terminix Companies, Inc. v. Dobson, supra,* 513 U.S. at p. 281.)

Thus, the United States Supreme Court has held that the FAA preempts state statutes which provide that certain actions may be maintained in court regardless of any arbitration agreements to the contrary. (*Perry v. Thomas, supra,* 482 U.S. at pp. 484, 490 [FAA preempts California statute providing wage collection actions may be maintained without regard to existence of arbitration agreements to the contrary].) Moreover, the FAA preempts state common law which, based on public policy, similarly purports to ban predispute arbitration agreements relating to specific types of disputes. (*Marmet Health Care Center, Inc. v. Brown* (2012) ___ U.S. ___, ___ [132 S.Ct. 1201, 1202-1203] [FAA preempts West Virginia Supreme Court decision that public policy prohibits enforceability of all predispute arbitration agreements that apply to claims alleging personal injury or wrongful death against nursing homes].)

In short, the section 2 saving clause of the FAA permits state law to bar the enforcement of an arbitration agreement only if "that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2." (*Perry v. Thomas, supra,* 482 U.S. at p. 492, fn. 9.)

It is easy to address the situation of a state statute or common law rule which prohibits the arbitration of a particular type of claim – the United States Supreme Court has held that such state law is preempted by the FAA. It is equally easy to address the situation of a contract defense when its application to an arbitration agreement bears no relation to the fact that the agreement at issue is an arbitration agreement, such as an

19

assertion that the party to be bound lacked the capacity to contract – such a rule would not be preempted by the FAA. The more difficult question arises when it is argued that a generally applicable doctrine has been applied in a fashion that is hostile to arbitration.

In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*), the California Supreme Court was asked to apply the doctrine of unconscionability to invalidate a clause in an arbitration agreement prohibiting class arbitration. The California Supreme Court held that, in some arbitration agreements, the class action waivers were unconscionable under California law.[14] (*Id.* at p. 160.) More importantly, the California Supreme Court held that this application of the unconscionability doctrine was not preempted by the FAA. (*Id.* at p. 166.) The California Supreme Court explained that unconscionability is "a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally. In other words, it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements. [Citation.]" (*Id.* at pp. 165-166.) As this application of the unconscionability doctrine did not discriminate against arbitration agreements, but applied to class action waivers generally, the California Supreme Court held that there was no federal preemption. (*Id.* at p. 167.)

---

[14] Specifically, the court held that when a class action waiver was found in a consumer contract of adhesion, in a setting in which disputes predictably involve small amounts of damages, and it is alleged that the party with superior bargaining power deliberately carried out a scheme to cheat large numbers of consumers out of individually small amounts of money, a class action waiver operates as an improper exculpatory clause and is therefore unconscionable. (*Discover Bank, supra,* 36 Cal.4th at pp. 162-163.)

In 2011, the United States Supreme Court overruled *Discover Bank* in

*Concepcion.* (*Concepcion, supra*, 131 S.Ct. at p. 1753.) In that case, the United States

Supreme Court explained that FAA preemption is not limited to situations in which the

state law expressly discriminates against arbitration. When a state law rule " 'stands as

an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress' " in enacting the FAA, the rule is preempted by the FAA, even if it is not

expressly hostile to arbitration. (*Id*. at p. 1753.) In considering the *Discover Bank* rule,

the United States Supreme Court explained that forcing the parties to arbitrate on a class

basis when they had not agreed to do so sacrificed many of the advantages of

arbitration. Class arbitration, when compared to individual arbitration, requires formal

procedures, greater cost, and a longer duration. (*Concepcion, supra,* 131 S.Ct. at

pp. 1751-1752.) As such, the *Discover Bank* rule "interferes with fundamental

attributes of arbitration and thus creates a scheme inconsistent with the FAA."

(*Concepcion, supra*, 131 S.Ct. at p. 1748.)

    *Concepcion* is notable not solely for its overruling of *Discover Bank*. The

United States Supreme Court's language in *Concepcion* emphasized the court's

commitment to treating arbitration agreements as no less than any other contracts. The

court stated that, in accordance with the FAA, "courts must place arbitration agreements

on an equal footing with other contracts [citation], and enforce them according to their

terms [citation]."[15] (*Concepcion, supra,* 131 S.Ct. at pp. 1745-1746.) The court

---

[15] In light of *Concepcion*, the 10th Circuit concluded that the FAA preempted
New Mexico common law providing that an arbitration provision is unconscionable if it

acknowledged that "the judicial hostility towards arbitration that prompted the FAA had manifested itself in 'a great variety' of 'devices and formulas' declaring arbitration against public policy." (*Id*. at p. 1747.) The court affirmed that it would not construe the saving clause of section 2 of the FAA to allow "a common law right, the continued existence of which would be absolutely inconsistent with the provisions of" the FAA. (*Id*. at p. 1748.)

The California Supreme Court addressed *Concepcion* in *Sonic-Calabasas*. The California Supreme Court reaffirmed that the defense of unconscionability was still a viable defense to arbitration agreements, but the FAA imposed limitations on that doctrine. The court inferred two limits the FAA places on unconscionability rules as they pertain to arbitration agreements: first, "such rules must not facially discriminate against arbitration and must be enforced evenhandedly" (*Sonic-Calabasas, supra,*

applies only, or primarily, to claims that just one party is likely to bring. (*THI of New Mexico at Hobbs Center, LLC v. Patton* (10th Cir. 2014) 741 F.3d 1162, 1164.) In other words, the 10th Circuit considered a contract in which one party's claims must be arbitrated while the other party's were to be litigated. The court stated, "the only way the arrangement can be deemed unfair or unconscionable is by assuming the inferiority of arbitration to litigation." (*Id*. at p. 1169.) The 10th Circuit concluded that this was impermissible, as the FAA preempted finding an agreement unfair "based on a perceived inferiority of arbitration to litigation as a means of vindicating one's rights." (*Ibid.*) CB&T relies heavily on this opinion. We are not bound by federal circuit court authority. In any event, we question the 10th Circuit's conclusion as too simplistic. While we would not, as a general rule, take issue with a forum selection clause choosing Alaska courts to resolve disputes under a contract, we would look with skepticism at a clause providing that a California employee's claims against its Alaskan employer must be brought in Alaska court, while the employer's claims against its employee must be brought in California court. That the two fora are courts of equal dignity cannot be denied; however, the application of the clause would clearly be unfair to a California employee who cannot easily go to a distant forum to pursue his or her claims. Similarly, while arbitration is not inferior to litigation in the abstract, an agreement with an arbitration clause that does not operate bilaterally may be unfair in its application.

22

57 Cal.4th at p. 1143); and second, "such rules, even when facially nondiscriminatory, must not disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[] with fundamental attributes of arbitration,' . . . ."[16] (*Ibid.*)

As we explained above, this case raises the issue of whether the application of the unconscionability doctrine to delegation clauses in *Murphy*, *Bruni*, and *Ontiveros* is preempted by the FAA.[17] We are specifically concerned with that part of the analysis of those cases which concluded that delegation clauses are substantively unconscionable due to the financial interest of the arbitrators who would be deciding the delegated issues. That conclusion is based on a belief that an arbitrator would be more likely to rule in favor of enforceability, so that the arbitrator would then be paid to resolve the dispute on the merits. It is further based on a belief that an arbitrator would be more likely to rule on enforceability issues in favor of a "repeat player" who would have further business for an arbitrator who rules that its contract is enforceable. This analysis is nothing more than an expression of a judicial hostility to arbitration, based on the assumption that a paid decisionmaker cannot be unbiased, and it, therefore, is wholly barred by the FAA. Indeed, taken to its logical conclusion, this analysis of bias

---

[16]    Malone's argument before this court emphasizes the second *Sonic-Calabasas* limitation; she argues that the conclusion that a delegation clause is unconscionable does not impose procedural requirements that interfere with the fundamental attributes of arbitration. We need not reach the issue; the doctrine of *Murphy, Bruni* and *Ontiveros* cannot survive the first limitation discussed in *Sonic-Calabasas*.

[17]    To the extent *Murphy*, *Bruni*, and *Ontiveros* can be interpreted as establishing a per se rule that delegation clauses are unconscionable, the cases would simply be establishing a rule that certain issues (e.g., enforceability) can never be arbitrated, despite agreements to do so. This would clearly be barred by the FAA and, in fact, Malone expressly disclaims such an argument.

23

questions the objectivity of arbitrators as a whole, as the very same argument can be made that an arbitrator will tend to rule *on the merits* in favor of an employer who is a "repeat player," as opposed to an employee who is not.[18]  It is not merely that we disagree with this negative view of arbitrators' ability to set aside their financial interests and resolve cases without bias;[19] the FAA prevents us from accepting that view, without any evidence that the specific arbitrator to whom the decisionmaking is delegated is biased.  The analysis discriminates against arbitration, putting agreements to arbitrate on a lesser footing than agreements to select any judicial forum for dispute resolution, and it is therefore preempted.

2.    *The Delegation Clause in the Instant Case Is Not Unconscionable*

As we have discussed, *Murphy*, *Bruni*, and *Ontiveros* relied on three factors to conclude that the delegation clauses at issue were substantively unconscionable: (1) they were outside the reasonable expectations of the parties; (2) they were not bilateral; and (3) they provided for decisionmaking by arbitrators who would be biased

---

[18]    Indeed, the *Ontiveros* court did just that.  The court quoted a law review note which concluded, " 'In the final analysis, common sense requires that we question the possibility of an arbitrator that is truly neutral.  As long as there exists little accountability for arbitrators—or while "repeaters" are involved—and if one or the other of the parties is directly paying the fees for the arbitrator, actual neutrality should not be counted upon.' " (*Ontiveros, supra,* 164 Cal.App.4th at p. 506, fn. 6.)  This sort of broad hostility to arbitration, "question[ing] the possibility of an arbitrator that is truly neutral," is exactly what the FAA was intended to prevent.  Without any evidence that the specific arbitrator at issue may be biased, there is no place for baseless assertions that arbitrators cannot be neutral.

[19]    A less pessimistic view would take the position that an arbitrator with a reputation for bias would have a short career indeed; arbitrators with reputations for fair resolution of disputes regardless of their own short-term financial interests would be in greater demand in the long run.

by their financial self-interest. We have concluded that the second factor is simply not present with the delegation clause at issue in the instant case, and the third factor is preempted by the FAA. What remains of Malone's claim of substantive unconscionability is that the clause is not within the reasonable expectation of the parties.

The only evidence of procedural unconscionability in the instant case is that the arbitration agreement was in a contract of adhesion. This is some evidence of procedural unconscionability, which must be accompanied by a high showing of substantive unconscionability in order to result in the conclusion that the delegation clause is unenforceable. The only evidence of substantive unconscionability is that the clause is outside the reasonable expectation of the parties. Even if this is true,[20] it is not

---

[20]    We have substantial concerns regarding the factual basis for making such an assumption. *Murphy* and *Bruni* both reached the conclusion in light of language to that effect in the United States Supreme Court's opinion in *First Options of Chicago, Inc. v. Kaplan, supra,* 514 U.S. at p. 945. (*Murphy, supra,* 156 Cal.App.4th at p. 145; *Bruni, supra,* 160 Cal.App.4th at p. 1295.) But the United States Supreme Court made these observations in 1995. In the interim, delegation of the decisionmaking on decisions of interpretation and enforceability has become much less uncommon. The AAA adopted a rule providing the arbitrators have the power to rule on their own jurisdiction – including issues regarding the existence, scope, and validity of the agreement – in 2000. (*Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1188 & fn. 2.) Similarly, JAMS Employment Arbitration Rules, Rule 11(c) provides that "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." This rule has been in existence since at least 2003. (See JAMS Employment Arbitration Rules, rev. 2003, Rule 9(c).) Thus, while it may have been true in 1995 that arbitrator resolution of enforceability was generally outside the reasonable expectation of the parties, by the mid-2000s, it appears to have been the default position of two major nationwide arbitration providers, and therefore, perhaps, more likely to be within the reasonable expectation of the parties.

sufficient to establish unconscionability in the instant case. The delegation clause is not inherently unfair – it is not unilateral; it does not provide for a biased decisionmaker. Moreover, the clause is clear and unmistakable; and it is not hidden in fine print in a prolix form. We are simply concerned with a clause which may have been outside the reasonable expectations of the party signing a contract of adhesion. This is not overly harsh or so one-sided as to shock the conscience. The delegation clause is not unconscionable, and the trial court therefore did not err in granting the motion to compel arbitration, to permit the arbitrator to resolve Malone's challenges to the validity and enforceability of the arbitration agreement as a whole.

## *DISPOSITION*

The petition for writ of mandate is denied.  CB&T shall recover its costs in connection with this writ proceeding.

## *CERTIFIED FOR PUBLICATION*


CROSKEY, Acting P. J.

WE CONCUR:


KITCHING, J.


ALDRICH, J.