No. 14-0441 - <u>Schumacher Homes of Circleville, Inc. v. John Spencer and Carolyn Spencer</u>

**FILED**

**April 24, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

Once again, a majority of this Court reveals its biases and blatant "judicial hostility"[1] toward arbitration by invalidating a plain and unmistakable agreement between the parties to arbitrate issues regarding whether a claim is subject to arbitration in the first instance. Feigning confusion about the term "arbitrability," the majority concludes that the circuit court can decide whether the claims of the respondent homeowners, the Spencers, are subject to arbitration and then leaves untouched the circuit court's wildly unsupported conclusion that they are not.

Before delving into the erroneous nature of the slim conclusion that the majority actually did reach in its opinion, it is necessary to first address the complete inadequacy of the majority's opinion as it pertains to the issues properly on appeal. Despite the petitioner, Schumacher Homes of Circleville, Inc. ("Schumacher"), appealing both the circuit court's disregard of the delegation provision–a threshold issue to be determined before a decision on the enforceability of the arbitration agreement is reached–and the circuit court's

---

[1]*AT&T Mobility LLC v. Concepcion*, __ U.S.__, 131 S.Ct. 1740 (2011) (quoting *Robert Lawrence Co. v. Devonshire Fabrics, Inc*., 271 F.2d 402, 406 (2d Cir. 1959)).

1

findings of unconscionability, the majority limits its opinion to the delegation provision. Certainly, had the majority properly enforced the delegation provision, which strips the circuit court of its ability to determine unconscionability, the circuit court's unconscionability ruling would be rendered moot. Once the delegation provision is triggered, those issues belong to the arbitrator–not to the circuit court, nor to this Court–and the majority's refusal to address these issues would be proper in that event.

Contrary to the above, the majority concludes that the delegation provision, which was never challenged below, is *not* enforceable. Inexplicably, the majority then fails to address substantively the circuit court's conclusions regarding unconscionability–all of which were on appeal to this Court. After castigating the Spencers for failing to respond to the issues raised on appeal in contravention of our Rules of Appellate Procedure, the majority then does little more than the Spencers by barely acknowledging Schumacher's remaining assignments of error. In fact, the majority disposes of all remaining issues in a single footnote, devoting four whole sentences to the alleged unconscionability of the arbitration agreement–the entire basis of the circuit court's order.[2]

---

[2]Even assuming arguendo that the issue of unconscionability is reached, the majority's terse conclusion that the arbitration agreement is unconscionable is not only unsupported but is facially incorrect. The majority summarily concludes that because the arbitration agreement provides that it shall not be "interpreted as [a] waiver of Schumacher's mechanic's lien rights[,]" the agreement lacks mutuality or bilaterality, rendering it unconscionable. I disagree.

(continued...)

2

Turning now to the complete fallacy underlying the majority's holding, a brief factual overview is necessary for context. On June 6, 2011, the Spencers entered into a contract with Schumacher for the construction of their home in Mason County, West Virginia. This contract contained an arbitration agreement, which the Spencers separately

[2](...continued)

In syllabus point nine of *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012), we held that "[a] court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability." In *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W.Va. 341, 752 S.E.2d 372 (2013), we acknowledged that courts have found a variety of acceptable exclusions in arbitration agreements that do not render the agreements unconscionable, such as when those exclusions concern mechanisms, such as security interests. *Id.*, at 365-66, 752 S.E.2d at 396-97. Similarly, in the case at bar, the preservation of Schumacher's mechanic's lien rights is simply not so harsh or unfair as to provide a sufficient basis for finding the arbitration agreement to be unconscionable.

The majority's erroneous "conclusion" is likely occasioned by its disregard of yet another assignment of error: the circuit court's failure to address the choice of law provision in the parties' contract which provides that their contract will be construed under Ohio law. We have previously "recognized the presumptive validity of a choice of law provision, (1) unless the provision bears no substantial relationship to the chosen jurisdiction or (2) the application of the laws of the chosen jurisdiction would offend the public policy of this State." *Manville Personal Injury Settlement Trust v. Blankenship*, 231 W.Va. 637, 644, 749 S.E.2d 329, 336 (2013). The majority ignores the presumptive validity of this choice of law provision and merely states that it applies West Virginia's substantive contract law because it is similar to that in Ohio.

The significance of this "oversight" is overwhelming. Schumacher states that the mechanic's lien exclusion in the arbitration agreement is entirely in conformity with Ohio law. As such, the majority's lone basis for the conclusion that the agreement was unconscionable is Schumacher's incorporation of a term required under Ohio law, which law it expressly elected under its choice of law provision.

and expressly acknowledged by placing their initials in the margin of the contract where the arbitration agreement appears. The plainly-written arbitration agreement provides:

> The Parties agree that any claim, dispute or cause of action, of any nature, including but not limited to, those arising in tort, contract, statute, equity, law, fraud, intentional tort, breach of statute, ordinance, regulation, code, or other law, or by gross or reckless negligence, arising out of or related to, the negotiations of the Contract Documents, the Home, the Property, materials or services provided to the Home or Property, the performance or non-performance of the Contract Documents or interaction of Homeowner(s) and Schumacher or its agents or subcontractors, *shall be subject to final and binding arbitration* by an arbitrator appointed by the American Arbitration Association in accordance with the Construction Industry Rules of the American Arbitration Association and judgment may be entered on the award in a court of appropriate venue. . . . *The arbitrator(s) shall determine all issues regarding the arbitrability of the dispute. . . .*

(emphasis added).

Notwithstanding their clear agreement to arbitrate, the Spencers filed a civil action in the circuit court against Schumacher alleging defects in their home. In reliance upon the plain language of the arbitration agreement, Schumacher filed a motion to dismiss the complaint and to compel arbitration. In response, the Spencers challenged the validity of the arbitration agreement, arguing that it was unconscionable. During the hearing held before the circuit court on Schumacher's motion, and in response to the Spencers submitting to the circuit court the issue of whether the claim was subject to the arbitration agreement, Schumacher raised the "delegation provision" within the arbitration agreement, which

4

provides that issues of arbitrability, *i.e.*, whether the claim is subject to arbitration, must likewise be decided by the arbitrator. Without so much as acknowledging the existence of the delegation provision, which clearly stripped the circuit court of the authority to decide the issue placed before it by the Spencers, the circuit court concluded that the arbitration agreement as a whole was unconscionable and, therefore, unenforceable.

While the majority devotes nearly all of its opinion to this delegation provision,[3] it ultimately misinterprets and invalidates this provision, straining to find one word within–"arbitrability"– to be ambiguous in its headlong march toward its ultimate goal of relieving the Spencers of their contractual obligation to arbitrate their claims. The United States Supreme Court has stated that "unless [the party opposing arbitration] challenge[s] the delegation provision specifically, we must treat it as valid under [9 U.S.C.] § 2, and must enforce it under [9 U.S.C.] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). This Supreme Court precedent instructs that once parties empower the arbitrator to decide arbitrability through a delegation provision, the only challenge left for a court to decide is the validity of a delegation clause itself, but only when that provision is specifically challenged by the party opposing arbitration. *Id.*

---

[3]Indeed, it is the only substantive analysis within the majority opinion. As previously indicated, the majority pays little more than lip service to the other issues in this matter, collapsing them into a single footnote without any analysis of the law or the facts pertinent to those issues.

Here, however, the Spencers did not do so—either in their complaint, during the hearing on Schumacher's motion to compel arbitration, or even before this Court.[4] Ironically, the majority attempts to chastise Schumacher for failing to raise the delegation provision in its initial motion to compel arbitration. However, as illustrated above in the procedural summary, there was simply no reason to do so at that juncture. Schumacher's initial motion to compel arbitration was based on the plain, unopposed (at that time) language of the arbitration agreement. Once the Spencers responded, seeking to place the issue of enforceability in front of the circuit court, the delegation provision became pertinent and was properly relied upon by Schumacher during oral argument before the circuit court.

As to the majority's purported "analysis," which concludes that the term "arbitrability" is too vague to be enforced, the majority relies upon dicta in a single California

---

[4]If the Spencers' counsel was not prepared to challenge the validity of the delegation provision during the hearing held before the circuit court, counsel could easily have asked the circuit court for a brief continuance for the purpose of considering such a challenge. The hearing transcript in the appendix record reflects that not only did the Spencers' counsel fail to make such a request, counsel dove head first into his procedural and substantive unconscionability arguments regarding the arbitration agreement, as a whole, completely ignoring Schumacher's arguments concerning the "delegation provision." The circuit court echoed the unconscionability arguments of the Spencers' counsel in its order denying Schumacher's motion to compel arbitration, likewise failing to address in any fashion the delegation provision in the parties arbitration agreement.

6

Court of Appeals case[5] to conclude that this "nebulous" term does not reflect a clear and unmistakable intent of the parties to confer upon the arbitrator "the gateway questions regarding the validity, revocability, and enforceability" of their arbitration agreement. However, the United States Supreme Court has utilized that precise term itself, stating that "parties can agree to arbitrate 'gateway' questions of '*arbitrability*,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-a-Center, Inc.*, 561 U.S. at 68-69 (emphasis added). The Supreme Court further explained that "'[c]ourts should not assume that the parties agreed to arbitrate *arbitrability* unless there is "clea[r] and unmistakabl[e]" evidence that they did so.'" *Rent-a-Center, Inc.*, 561 U.S. at 69 n.1, citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)) (emphasis added). Clearly, the United States Supreme Court does not find the word "arbitrability" to be nebulous and, unlike this majority, understands that it simply means "subject to or susceptible to arbitration."

Contrary to the majority's position, the parties' delegation provision clearly and unmistakably entails the "'gateway' question[] of . . . whether the parties have agreed to arbitrate 'arbitrability of the dispute[.]'" *Rent-a-Center, Inc.*, 561 U.S. at 68-69. The arbitration agreement, which the Spencers initialed, clearly states: "The arbitrator(s) shall determine all issues regarding the arbitrability of the dispute." Other courts have interpreted

---

[5]*Brunt v. Didion, Bruni v. Didion*, 73 Cal.Rptr.3d 395 (Cal. Ct. App. 2008).

7

similar succinct language to evidence a clear and unmistakable intent of parties to delegate the arbitrability decision to an arbitrator and none have found it to be so incapable of comprehension as to render it unenforceable. *See Sadler v. Green Tree Servicing, LLC,* 466 F.3d 623, 624 (8th Cir.2006) (finding provision that "[a]ny controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s)[]" was clear and unmistakable); *Muigai v. IMC Const., Inc.*, No. PJM 10–1119, 2011 WL 1743287, *4 (D. Md. May 6, 2011) (recognizing that question of arbitrability is issue for judicial determination unless parties clearly and unmistakably provide otherwise and finding that delegation provision stating that "the Arbitrator(s) shall have the exclusive power to determine issues of arbitrabilty[]" evidenced parties' intent to submit arbitrability decision to arbitrator). It is, in fact, difficult to discern a single term, phrase, or description of the issues encompassed in the term "arbitrability" that better or more clearly describes those issues than the word "arbitrability" itself.

In addition to the subject delegation provision discussed above, I observe that the parties have included a second delegation provision through their incorporation of the "Construction Industry Rules of the American Arbitration Association" into their arbitration agreement. *See Malone v. Superior Court,* 173 Cal.Rptr.3d 241, 245 (Cal. Ct. App. 2014) (finding second delegation clause was incorporated into arbitration agreement by reference to applicable American Arbitration Association rules which provide that "'[t]he arbitrator

8

shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."). Although not specifically argued by Schumacher, as seen below, a vast majority of courts have found that the inclusion of American Arbitration Association ("AAA") rules evidences a clear and unmistakable delegation of the question of arbitrability to the arbitrator.

In *Fadal Machining Centers, LLC v. Compumachine, Inc.*, 461 F.App'x 630 (9th Cir. 2011), the United States Court of Appeals for the Ninth Circuit addressed a challenge to the district court's conclusion that the arbitration clause in the parties' contract clearly established an agreement to submit all disputes, including the question of arbitrability, to an arbitrator. Relying upon the arbitration clause's incorporation of "the AAA's Commercial Arbitration Rules, which provide that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement[,]'" the appellate court concluded that "the arbitration clause clearly and unmistakably delegated the question of arbitrability to the arbitrator." *Id.* at 632. *See also Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (recognizing its prior holding that "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("Consequently, we

9

conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir.2005) ("By incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Haire v. Smith, Currie & Hancock LLP*, No. 12-749, 2013 WL 751035 at *5 (D.D.C. Cir. Feb. 28, 2013) (holding that incorporation of AAA Commercial Rules is clear and unmistakable delegation of arbitrability and noting that "a recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying the requisite standard"); *Yellow Cab Affiliation, Inc. v. New Hampshire Insur. Co.*, No. 10cv6896, 2011 WL 307617 at *4-5 (N.D. Ill. Jan. 28, 2011) (finding that "by specifically incorporating the Commercial Arbitration Rules of the American Arbitration Association into their agreement, the parties clearly and unmistakably evidenced their intention to grant the arbitrator the authority to determine whether their dispute is arbitrable."); *GHA Technologies Inc. v. McVey*, No. 1 CA-SA 11-0304, 2012 WL 209024 at *2 (Ariz. Ct. App. Jan. 24, 2012) (finding that delegation of authority to arbitrator may be express or implied and citing other

10

authority for proposition that parties' agreement to adhere to AAA rules evidenced their agreement that arbitrator would decide validity of arbitration agreement); *In re Application of R D Management Corp.*, 766 N.Y.S.2d 304 (N.Y. Sup. 2003) (recognizing that express agreements to proceed under AAA rules, which grant arbitrator power to decide scope of arbitration clause, have been construed as delegation of issue of arbitrability to arbitrator and finding that any questions regarding arbitrability must be resolved by arbitration panel). Accordingly, in addition to the specific delegation provision relied upon by Schumacher, the foregoing line of cases further compels the conclusion that the parties clearly and unmistakably delegated the question of arbitrability to an arbitrator through their incorporation of the AAA rules into their arbitration agreement.

The benefits of arbitration are clear and widely recognized. As one court has explained:

> Parties agree to arbitrate to secure "streamlined proceedings and expeditious results [that] will best serve their needs." The arbitration of disputes enables parties to avoid the costs associated with pursuing a judicial resolution of their grievances. . . . Further, the adversarial nature of litigation diminishes the possibility that the parties will be able to salvage their relationship. For these reasons parties agree to arbitrate and trade "the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."

*Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 936 (4th Cir. 1999) (internal citations omitted). This Court has been notoriously chastised by the United States Supreme Court for

11

its failure to uphold valid arbitration agreements and ensure that such agreements are not "singled out" for hostile treatment or disfavor. *See Marmet Health Care Center v. Brown*, 132 S. Ct. 1201 (2012). The majority's opinion does little to convey that the United States Supreme Court's message was received; in fact, such tortured "analysis" certainly suggests that a majority of this Court took little heed of it.

Accordingly, I respectfully dissent.