Filed 5/23/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NIELSEN CONTRACTING, INC. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> APPLIED UNDERWRITERS, INC. et al., <br><br> Defendants and Appellants. | D072393 <br><br><br> (Super. Ct. No. 37-2017-00001814-CU-CO-CTL) <br><br> ORDER DENYING REHEARING AND MODIFYING OPINION <br><br> NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 3, 2018, be modified as follows:

1. On page 5, following the third sentence of the first full paragraph and before footnote 3, the following two sentences are added:

> This agreement was subject to certain exceptions, including that (1) *CIC* was permitted to renew a policy "issued in connection with an RPA in force as of July 1, 2016"; and (2) AUCRA could issue or renew an RPA if *Shasta Linen's* rulings were successfully challenged in a court proceeding.  Additionally, the parties agreed that arbitrations under "an in-force RPA or a past RPA entered into or issued in California will take place in California."

3. On page 25, following the second sentence of the first full paragraph, add as footnote 4 the following footnote, which will require renumbering of all subsequent footnotes:

Defendants maintain we should not consider *Shasta Linen* because its decision was "undermined" by the Stipulated Cease and Desist order. This argument is unsupported. The stipulation reaffirms *Shasta Linen's* ruling that *AUCRA* may not issue or renew RPAs absent compliance with the administrative filing requirements set forth in sections 11658 and 11735. The parties' agreement as to certain limited exceptions to this rule and to conduct any arbitrations in California does not undercut *Shasta Linen's* reasoning. The administrative decision is relevant to our analysis because we have found its reasoning persuasive, not because we are legally bound by its conclusions.

There is no change in the judgment.

The petition for rehearing is denied.

McCONNELL, P. J.

Copies to: All parties

Filed 5/3/18 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NIELSEN CONTRACTING, INC. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> APPLIED UNDERWRITERS, INC. et al., <br><br> Defendants and Appellants. | D072393 <br><br><br> (Super. Ct. No. 37-2017-00001814-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Affirmed.

Hinshaw & Culbertson, Spencer Y. Kook and Travis Wall for Defendants and Appellants.

Larry J. Lichtenegger for Plaintiffs and Respondents.

Nielsen Contracting, Inc. and T&M Framing, Inc. (collectively Nielsen) sued several entities (defendants) alleging these entities fraudulently provided workers' compensation policies to Nielsen that were illegal and contained unconscionable terms. Defendants moved to compel arbitration and stay the litigation under an arbitration

provision in one defendant's contract, titled Reinsurance Participation Agreement (RPA). Nielsen opposed the motion, asserting the arbitration provision and the provision's delegation clause were unlawful and void. After briefing and a hearing, the trial court agreed and denied defendants' motion.

Defendants appeal. They contend: (1) the arbitrator, and not the court, should decide the validity of the RPA's arbitration agreement under the agreement's delegation clause; and (2) if the court properly determined it was the appropriate entity to decide the validity of the delegation and arbitration provisions, the court erred in concluding these provisions are not enforceable. We reject these contentions and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

We summarize the facts based on the complaint's allegations, and the materials submitted in support of and opposition to the motion to compel arbitration. We describe only those facts necessary to resolve the issues pertaining to the arbitration issue, and make no attempt to discuss all of the facts relevant to Nielsen's substantive allegations against defendants.

### *Background*

In 2012, Applied Underwriters, Inc. (Applied) provided quotes to Nielsen for Applied's patented workers' compensation program known as "EquityComp." Based on Applied's representations about the program's low cost and profit-sharing benefits, Nielsen signed a "Request to Bind" with Applied. Under this agreement, Nielsen was

initially issued a guaranteed-cost workers' compensation policy by California Insurance Company (CIC), one of Applied's subsidiaries.

The Request to Bind also required Nielsen to sign a separate agreement (the RPA) with another one of Applied's subsidiaries, Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA). Nielsen and AUCRA signed the RPA in December 2012. The RPA had a three-year term.

The RPA modified and supplanted many of the CIC policy terms, including adding an arbitration provision. As discussed in more detail below, this provision required arbitration of "[a]ny dispute or controversy" in the British Virgin Islands before "disinterested officials of insurance or reinsurance companies." The arbitration provision delegated to the arbitrator the authority to rule on disputes concerning the enforceability of the arbitration provision. This is known as a "delegation clause."

*Complaint*

In January 2017, Nielsen filed a complaint against Applied and its two subsidiaries (AUCRA and CIC) (collectively defendants). Nielsen sought a declaration that the RPA is void and its provisions are unconscionable, and sought damages for defendants' misrepresentations and breach of the implied covenant of good faith and fair dealing. Nielsen alleged the RPA is an adhesion contract with unfair and unconscionable terms; the RPA was written and structured to purposely mislead Nielsen and to intentionally avoid and circumvent California insurance laws; and the RPA is an illegal contract because it was not filed with or approved by the California Department

3

of Insurance (Insurance Department), as required by Insurance Code section 11658 and title 10 of the California Code of Regulations section 2268.[1]  Nielsen alleged "EquityComp is the brainchild of Applied," which caused CIC to issue an approved guaranteed-cost workers' compensation insurance policy "to give the appearance of compliance with the California insurance regulations, although CIC is never responsible for making payment on claims using its own money."

Several months before this complaint was filed, in June 2016, the California Insurance Commissioner (Insurance Commissioner) issued an administrative decision in a case involving a different insured (Shasta Linen Supply, Inc.) that had challenged the same EquityComp insurance program offered by these same defendants.  (*Matter of Shasta Linen Supply*, *Inc*., Decision & Order, dated June 20, 2016, File No. AHB-WCA-14-31 (*Shasta Linen*).)  In the 70-page decision, the Insurance Commissioner found the RPA to be unlawful and void as a matter of law for various reasons, including that it had not been filed and approved by the Insurance Department before it was issued.  (*Ibid.*)  In reaching this conclusion, the Insurance Commissioner also found the governing administrative regulations require workers' compensation insurers to obtain approvals for "side agreements," including arbitration provisions that differ from the

---

[1]     Further unspecified statutory references are to the Insurance Code.  Further references to Regulations sections are to title 10 of the California Code of Regulations.  Unless otherwise stated, all references to Regulations section 2268 are to the version existing in 2012 when the parties signed the RPA.

dispute resolution provisions in a previously approved insurance policy. (*Id.* at p. 43; See Regs., § 2268.)

Two months after the *Shasta Linen* administrative decision was issued, the Insurance Department entered into a stipulated cease-and-desist order with Applied, CIC, and AUCRA. In this stipulation, defendants stated they disagreed with the *Shasta Linen* administrative decision, but acknowledged the decision "was made precedential" under Government Code section 11425.60, subdivision (b).[2] Defendants also agreed it would not issue any new RPA or renew any existing RPA unless the policy is filed with and approved by the Insurance Department.[3]

*Motion to Compel Arbitration*

In response to Nielsen's complaint, AUCRA moved to compel arbitration under the RPA's lengthy arbitration provision. Of relevance here, the provision states:

> "(A) It is the express intention of the parties to resolve any disputes arising under this Agreement without resort to litigation in order to protect the confidentiality of their relationship and their respective business and affairs. Any dispute or controversy . . . arising out of

[2]    This code section permits an administrative agency to designate a decision as "precedent" if the decision "contains a significant legal or policy determination of general application that is likely to recur." (Gov. Code, § 11425.60, subd. (b).) An administrative decision so designated can be relied upon by the agency in later cases. (*Id.*, subd. (a).)

[3]    We deny Nielsen's request that we take judicial notice of a later settlement agreement between defendants and the Insurance Department in which defendants agreed to dismiss their superior court writ petition challenging the *Shasta Linen* decision. This settlement agreement was not before the trial court, and therefore it is not properly before this court. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

or related to this Agreement shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association [AAA].

"(B) *All disputes* between the parties relating in any way to (1) *the execution and delivery*, *construction or enforceability of this Agreement*, (2) the management or operations of the Company, or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein *shall be . . . finally determined exclusively by binding arbitration in accordance with the procedures provided herein. . . .* [¶] . . . [¶]

"(D) . . . All arbitrators shall be active or retired, disinterested officials of insurance or reinsurance companies not under the control or management of either party to this Agreement and will not have personal or financial interests in the result of the arbitration. [¶] . . . [¶]

"(G) . . . Judgment upon the award rendered by the arbitrator or arbitrators may be entered by any court of competent jurisdiction in Nebraska or application may be made in such court for judicial acceptance of the award and an order of enforcement as the law of Nebraska may require or allow.

"(H) The award of the arbitrator or arbitrators shall be binding and conclusive on the parties . . . .

"(I) All arbitration proceedings shall be conducted in the English language in accordance with the rules of the [AAA] and shall take place in Tortola, British Virgin Islands or at some other location agreed to by the parties."  (Italics added.)

In seeking arbitration under these provisions, AUCRA argued the italicized language in paragraph (B) requiring arbitration of disputes concerning the "enforceability of this Agreement" was a delegation clause that gave the arbitrator the sole and exclusive authority to rule on challenges to the enforceability of the arbitration agreement.  AUCRA presented evidence that the AAA rules likewise delegate to the

6

arbitrator the exclusive authority to rule on the arbitration clause's enforceability. AUCRA thus argued the court had no authority to rule on challenges to the enforceability of the arbitration agreement or its delegation clause.

As explained in more detail below, AUCRA alternatively argued that if the court reached the arbitrability issues, the arbitration clause is valid and enforceable.

Defendants Applied and CIC (not named parties in the RPA) joined in the motion to the extent AUCRA sought to stay the litigation pending the arbitration.

*Opposition to Motion to Compel*

In opposing the motion to compel arbitration, Nielsen argued that under settled authority a delegation clause is severable from the main contract and from the arbitration clause, and the court must first resolve challenges to the enforceability of the delegation clause if the party brings a specific challenge to the delegation clause. (See *Rent-A-Center*, *West*, *Inc. v. Jackson* (2010) 561 U.S 63 (*Rent-A-Center*).)

Nielsen argued that its specific challenge to the delegation clause satisfied this test and therefore the court (and not the arbitrator) was required to rule on the enforceability of the delegation clause and the arbitration provision. In explaining this challenge, Nielsen argued that the RPA's arbitration provision and delegation clause materially changed the dispute resolution provisions in the approved CIC insurance policies, and therefore they were "collateral" agreements required to be filed with the Insurance Department under section 11658 and Regulations section 2268. Nielsen

7

maintained that by not filing these provisions with the Insurance Department, the provisions were void and unenforceable.

Nielsen also presented evidence showing the RPA was "virtually identical" to the agreement found to be unlawful and void in the *Shasta Linen* administrative decision.

*Reply to Motion to Compel*

In reply, defendants argued that because Nielsen's illegality challenge was "not specific" to the arbitration provision or its delegation clause, and instead "implicates" the RPA "as a whole," the court must allow the arbitrator to decide if the delegation clause and arbitration agreement are enforceable. Defendants alternatively argued that even if the court were to consider Nielsen's challenge to the enforceability of the arbitration provisions (including the delegation provision), these provisions are enforceable under California law despite the failure to file them with the appropriate agency.

*Court's Ruling*

After a hearing, the court denied defendants' motion to compel. On the question whether the court has the authority to decide the enforceability of the delegation and arbitration clauses, the court stated that Nielsen was not merely derivatively challenging the legality of the main contract, but instead was asserting that "both the delegation provision and the arbitration provision are illegal and unenforceable separate and apart from the evident unenforceability of the entire RPA, albeit for the same reason, i.e., failure to file with, and obtain approval from, the Insurance Commissioner."

8

On the merits, the court agreed with Nielsen that neither the delegation clause nor the arbitration requirement was enforceable.  The court reasoned: "The delegation and arbitration provisions qualify as collateral agreements which modify the obligation of the underlying CIC policy that should have been attached to the original CIC policy as endorsements and filed with the Insurance Commissioner for approval.  Because they were not filed and approved, they are unenforceable as a matter of law pursuant to [section] 11658 and [Regulations section] 2268."

Defendants appeal.

DISCUSSION

In ruling on a motion to compel arbitration, the trial court shall order parties to arbitrate "if it determines that an agreement to arbitrate the controversy exists . . . ." (Code Civ. Proc., § 1281.2.)  "[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense . . . ."  (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468.)  In evaluating an order denying a motion to compel arbitration, " ' "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' "  (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82.)  If the trial court resolved contested facts, we "review the court's factual determinations for substantial evidence." (*Ibid.*)

9

The parties agree the RPA is governed by the Federal Arbitration Act (FAA), which provides that a contractual arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The FAA " 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner." (*Preston v. Ferrer* (2008) 552 U.S. 346, 353 (*Preston*).) Arbitration is a matter of contract, and "parties are generally free to structure their arbitration agreements as they see fit." (*Volt Info. Sciences v. Leland Stanford Jr. University* (1989) 489 U.S. 468, 479.) However, under the FAA's savings clause, an arbitration agreement is not enforceable if a party establishes a state law contract defense, such as fraud, duress, unconscionability, or illegality. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339; *Poublon v. C.H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251, 1259; see *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 962.) Although arbitration agreements cannot be "invalidated 'by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue,' " the enforceability of the agreement remains subject to defenses applicable to all other contracts. (*McGill*, at p. 962.)

Under these general principles, we consider defendants' contentions that the trial court erred in concluding (1) the court, and not the arbitrator, decides the enforceability of the delegation clause and arbitration agreement; and (2) the unfiled delegation and arbitration agreements were unlawful and therefore unenforceable.

I. *"Who Decides":  Enforceability of Delegation Clause*

The parties agree the delegation clause expresses the parties' clear intent to delegate the issue of the enforceability of the arbitration clause to the arbitrator, but that applicable law requires courts to rule on specific challenges to the enforceability of delegation clauses before compelling the matter to arbitration.  They disagree as to whether Nielsen raised an adequate challenge to the enforceability of the delegation clause to require judicial resolution of the challenge.

We conclude the court properly found Nielsen's challenge to the delegation clause was sufficient to require the court to rule on the question of the enforceability of the delegation clause.  To explain this conclusion, it is helpful to understand the general rules pertaining to the "who decides" issue, and the United States Supreme Court's view that a delegation clause, an arbitration agreement, and the underlying agreement are each evaluated—for purposes of applying the FAA—as severable contracts.  (*Rent-A-Center*, *supra*, 561 U.S. at pp. 70-72.)

A.  *Legal Principles*

It has long been settled that when parties have agreed to arbitration, challenges to the validity of the underlying contract, including contract defenses such as fraud in the inducement or illegality, are for the arbitrator to decide.  (*Preston*, *supra*, 552 U.S. at p. 353*; Buckeye Check Cashing*, *Inc*, *v. Cardegna* (2006) 546 U.S. 440, 443-445 (*Buckeye*); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 402-403 (*Prima Paint*).)  This is because the arbitration clause is viewed as separate from

11

the underlying contract.  (*Buckeye*, at pp. 445-446.)  Thus, allegations that the main contract is unlawful or unconscionable does not affect the enforceability of the arbitration clause.  (*Ibid.*)

However, challenges to the validity of the arbitration clause itself are generally resolved by the court in the first instance.  (*Rent-A-Center*, *supra*, 561 U.S. at p. 71; *Buckeye*, *supra*, 546 U.S. at pp. 444-445; *Prima Paint*, *supra*, 388 U.S. at pp. 403-404.)  An exception to this rule applies when the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator.  (*Rent-A-Center*, at pp. 68-69; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 891-892.)  Such delegation clauses are generally enforceable according to their terms.  (*First Options of Chicago*, *Inc. v. Kaplan* (1995) 514 U.S. 938, 944; *Aanderud*, at pp. 891-892; *Pinela v. Neiman Marcus Group*, *Inc.* (2015) 238 Cal.App.4th 227, 239.)

In *Rent-A-Center*, the United States Supreme Court addressed the question of who rules on a challenge to the enforceability of a delegation clause: does the court decide or does the arbitrator decide?  (*Rent-A-Center*, *supra*, 561 US. at pp. 67-76.)  The high court began this analysis by confirming that a delegation clause—nested within the larger arbitration agreement—must be viewed as an independent ("severable") contract.  (*Id.* at pp. 70-71.)  Thus, the court held that as with any independent contract, *the court must resolve specific challenges to the delegation clause* that are proper under section 2 of the FAA, i.e., any "generally applicable contract defenses."  (*Rent-A-Center*, at pp. 68, 71.)  "If a party challenges the validity under [FAA] § 2 of the precise agreement to

12

arbitrate at issue, the federal court must consider the challenge before ordering compliance with" the delegation clause. (*Id*. at p. 64.) Otherwise, courts would be treating the delegation clause on a ground that would " 'elevate it over other forms of contract,' " which is not permitted under the FAA. (*Id*. at p. 71.)

But—consistent with its severability reasoning—the *Rent-A-Center* court made clear this rule requiring judicial consideration of contractual defenses to the enforceability of the delegation clause is triggered *only* if the challenge is "directed specifically to the agreement to arbitrate." (*Rent-A-Center*, *supra*, 561 U.S. at p. 71.) Thus, an argument that the arbitration agreement or the underlying contract is unenforceable is not sufficient to trigger the court's obligation to resolve contentions regarding the enforceability of a severable delegation clause. (*Id.* at pp. 71-76.)

The facts of *Rent-A-Center* illustrate this principle. There, the plaintiff filed an employment discrimination suit against his former employer. (*Rent-A-Center*, *supra*, 561 U.S. at p. 65.) The employer responded by seeking arbitration based on an arbitration agreement that was separate from the underlying employment contract and contained a delegation clause. (*Id.* at pp. 65-66*.*) The employee opposed the motion, arguing the arbitration agreement was unconscionable. (*Id.* at p. 66.) But the employee challenged only the validity of the arbitration contract and never "even mention[ed] the delegation provision." (*Id.* at p. 72.) On this record, the United States Supreme Court found the arbitrator, and not the court, was to consider the enforceability of the delegation clause because the employee had not challenged the delegation provision.

(*Id.* at pp. 72-76.)  The court reasoned that the delegation clause must be viewed as a separate agreement nested within the arbitration agreement, and unless the clause is directly challenged, the arbitrator must resolve all of the disputed issues.  (*Ibid.*)

Following *Rent-A-Center*, California courts have recognized that a court is the appropriate entity to resolve challenges to a delegation clause nested in an arbitration clause when a specific contract challenge is made to the delegation clause.  (See, e.g., *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559-1560 (*Malone*).)  In *Malone*, the plaintiff challenged an employment contract *and* the delegation clause on grounds of unconscionability.  (*Id.* at pp. 1556-1557.)  The reviewing court held the unconscionability challenge to the delegation clause was for the court to resolve.  (*Id.* at pp. 1559-1560.)  However, after evaluating that challenge, the court held the unconscionability challenge to the delegation clause was without merit.  (*Id.* at pp. 1560-1571.)  The court thus held the delegation clause was enforceable and the defendants' motion to compel arbitration should have been granted.  (*Id.* at pp. 1570-1571.)

### B.  *Analysis*

Defendants contend the court erred in finding that Nielsen raised an adequate challenge to the enforceability of the delegation clause to require judicial resolution of the challenge.  The contention is unsupported.  Unlike the *Rent-A-Center* plaintiff and similar to the *Malone* plaintiff, Nielsen expressly raised contract challenges to the delegation clause.  In opposing the motion to compel, Nielsen argued the delegation

14

clause was unenforceable because it constituted a material change to CIC's filed insurance policy (which contained no arbitration clause or delegation clause), and the RPA's delegation clause constituted an endorsement or collateral agreement that was required to be filed with the Insurance Department to be lawful and enforceable. Defendants countered by arguing California law does not require a delegation clause to be approved by the Insurance Department, and an unfiled arbitration provision and delegation clause remain lawful and enforceable. These issues relate *specifically to the enforceability of the delegation clause*, and thus under *Rent-A-Center* these issues are for the court to resolve.

Relying on *Rent-A-Center*, defendants contend a court may rule on the enforceability of the delegation clause *only* if the plaintiff's challenge to the delegation clause is *different from* the plaintiff's challenge to the entire contract or to the entire arbitration agreement. This argument is not supported by *Rent-A-Center*'s holding or logic. The high court's determination that a court should generally resolve specific state law contractual defenses to delegation clauses was based on its view that delegation clauses are separate and severable from the remainder of the arbitration agreement and the FAA requires that arbitration provisions be enforced in the same manner as other types of contractual provisions. (*Rent-A-Center*, *supra*, 561 U.S. at pp. 67, 70-71 [under the FAA courts must "place[] arbitration agreements on an equal footing with other contracts"].) If we were to accept defendants' argument that courts are precluded from ruling on specific contract defenses to a delegation clause merely because the same

15

defense is also brought to invalidate other related contractual provisions, we would be treating delegation clauses differently than other contractual clauses, a determination that would be inconsistent with the FAA, as interpreted by the United States Supreme Court.

*Rent-A-Center*'s discussion of the type of challenge that *might* have triggered court review supports our conclusion. In explaining that the plaintiff's unconscionability challenge specifically concerned only the validity of the contract as a whole, rather than the delegation provision, the high court noted that the plaintiff's "substantive unconscionability arguments assailed arbitration procedures called for by the [arbitration] contract—the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision. It may be that had [the employee] challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, [the employee] would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to

16

establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination. [The employee], however, did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the *entire* Agreement invalid." (*Rent-A-Center*, *supra*, 561 U.S. at p. 74.)

This hypothetical—that *if* the plaintiff *had* directed the unconscionability challenges (the unfairness of the discovery limitations and the fee-splitting requirements) against the delegation clause *in addition to* asserting the same unconscionability challenge against the arbitration agreement itself, the "challenge [to the delegation clause] should have been considered by the court"—illustrates that the focus of the court's attention must be on whether the particular challenge *is directed at* the delegation clause, not whether the same challenges are *also* directed at the agreement or agreements into which the delegation clause is embedded or nested. (*Rent-A-Center*, *supra*, 561 U.S. at p. 74.) Under *Rent-A-Center*'s reasoning, whether the challenge is the same as or different from the challenge to other provisions of the arbitration clause or underlying agreement is not dispositive of whether the challenge is specifically directed at the delegation clause. (See *Malone*, *supra*, 226 Cal.App.4th at pp. 1559-1560.)

We find unhelpful defendants' reliance on Justice Paul Steven's dissenting opinion to support their interpretation. (*Rent-A-Center*, *supra*, 561 U.S. at pp. 76-88 (dis. opn. of Stevens, J.).) Justice Stevens disagreed with the majority's view that a

17

court can "pluck" a delegation clause from a potentially invalid or illegal arbitration clause, and enforce the delegation clause despite the alleged invalidity of the arbitration provision in which it is nested. (*Id.* at pp. 85, 86-87.) In explaining this objection, Justice Stevens suggested that under the majority opinion, "A claim that an *entire* arbitration agreement is invalid will not go to the court unless the party challenges the *particular sentences* that delegate such claims to the arbitrator, on some contract ground that is *particular and unique* to those sentences." (*Id.* at p. 86, third italics added.)

Viewed in context, this "particular and unique" observation does not support that a challenge to the delegation clause cannot be the same as the challenge to the arbitration agreement. Justice Stevens was emphasizing the majority's view (with which he disagreed) that the objection must be directed to the delegation clause and not to the larger arbitration provisions into which it is nested, and did not consider circumstances when a party makes the same or similar challenge to the delegation and arbitration clause. Moreover, a dissenting opinion's interpretation of a majority opinion is not binding, and its validity is particularly questionable when, as here, it is based on an expansive reading of the majority opinion beyond the particular holding of the case.

Recently, a federal court held the court was the proper entity to resolve challenges to a delegation clause in a similar RPA. (See *Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (4th Cir. 2017) 867 F.3d 449 (*Minnieland*).) *In Minnieland*, a daycare center sued AUCRA, asserting that the " 'Equity Comp' " program and the RPA "constituted an unlawful 'attempt to

18

circumvent' various Virginia laws related to insurance and workers' compensation."  (*Id.* at pp. 451, 452.)  In response to AUCRA's motion to compel arbitration under an arbitration provision and delegation clause essentially identical to the provision here, Minnieland argued that Virginia law "rendered void 'any' arbitration provision in the RPA" (including the delegation clause) and therefore the court must determine the enforceability of the delegation clause and the arbitration provision.  (*Id.* at p. 453.)  The district court agreed, and refused to enforce the delegation clause.  (*Ibid.*)

> The Fourth Circuit affirmed, reasoning:

> > "*Rent-A-Center* makes clear . . . that '[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement . . . .' [¶] . . . [¶]

> > "[AUCRA] argues that Minnieland, like the plaintiff in *Rent-A-Center*, failed to specifically challenge the delegation provision in the RPA.  But before the district court, Minnieland argued that [Virginia law] rendered void '*any*' arbitration provision in the RPA [citation], necessarily including the delegation provision, which is simply 'an additional, antecedent agreement' to arbitrate [citations].' And to avoid any doubt that its challenge to the enforceability of the arbitration agreements in the RPA extended to the delegation provision, Minnieland expressly asserted that under [a Virginia statute], '*the court must resolve* the validity of the arbitration provision,' an argument relevant only to the enforceability of the delegation provision.  [Citation.]  Accordingly, Minnieland 'challenged the validity of that delegation with sufficient force and specificity' to satisfy *Rent-A-Center*."  (*Minnieland*, *supra*, 867 F.3d at pp. 455-456.)

In *Minnieland*, the specific challenge to the delegation clause was the same as the challenge to the arbitration clause as a whole, but this fact did not preclude the

19

reviewing court from upholding the district court's conclusion that it was the proper entity to rule on the enforceability of the delegation clause.  (*Ibid*.)

This case and *Minnieland* are factually distinguishable from the decisions relied upon by defendants.  (See *Matter of Monarch Consulting*, *Inc. v. National Union Fire Insurance Company of Pittsburgh, PA* (2016) 26 N.Y.3d 659 (*Monarch Consulting*); *Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Company*, *Inc*. (N.D. Cal. 2016) 2016 WL 5407898; *South Jersey Sanitation Company*, *Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.* (3d Cir. 2016) 840 F.3d 138; *Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.* (6th Cir. 2014) 590 Fed. Appx. 482, 485-486.)  Although these courts addressed the enforceability of the same (or similar) arbitration clause contained in the same (or similar) insurance contracts, the courts found the plaintiff-insured had not asserted a specific challenge to the delegation clause.  (See, e.g., *Monarch Consulting*, at p. 676 ["a review of the record reveals that [the insured] did not specifically direct *any challenge* to the delegation clauses empowering the arbitrators to determine gateway questions of arbitrability," italics added]; *Mike Rose's*, at p. *9 [rejecting plaintiff-insured's argument that "the delegation provision cannot be enforced because the Agreements themselves are unlawful"; see also *Milan Express*, at pp. 485-486.)

Defendants argue that a party cannot trigger a judicial determination on the enforceability of a delegation provision merely by labeling a challenge to the broader arbitration clause or the substantive contract as a challenge to the delegation provision.

20

They maintain "it is not enough simply to state that one is challenging" the delegation provision " 'if [the argument] is a subterfuge for a challenge that the entire agreement . . .' is unenforceable." We agree with these assertions. But the need for a careful inquiry regarding the nature of the party's challenge does not support a blanket rule that any time there is a similar challenge to the delegation clause and to other contractual provisions, a court must ignore its statutory obligation to rule on state law contract defenses *specifically asserted* against the enforceability of the delegation clause. (See *Malone*, *supra*, 226 Cal.App.4th at pp. 1559-1560.)

In this case, the court found Nielsen asserted a specific, substantive challenge to the delegation clause separate from the challenge to the arbitration clause and the underlying contracts, and this challenge was not merely a device to challenge other provisions in the contract. The record supports this conclusion. The court thus properly found it was the proper entity to rule on Nielsen's challenges to the enforceability of the delegation clause.

## II. *Enforceability of Delegation Clause and Arbitration Provision*

Defendants contend that assuming the court had the authority to decide the issue, the court erred in concluding Nielsen met its burden to show the delegation clause and arbitration provision were unenforceable. This contention is without merit. The court properly found these provisions were void and unenforceable because defendants had not filed these provisions with the Insurance Commissioner as required by section 11658 and Regulations section 2268.

21

A. *Applicable Law*

Section 11658 states in relevant part:

"(a) A workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with [the Workers Compensation Insurance Rating Bureau] . . . and 30 days have expired from the date the form or endorsement is received by the commissioner from the rating organization . . . , unless the commissioner gives written approval of the form or endorsement prior to that time.

"(b) If the commissioner notifies the insurer that the filed form or endorsement does not comply with the requirements of law, specifying the reasons for his or her opinion, *it is unlawful for the insurer to issue any policy or endorsement in that form*." (Italics added.)

At the time the RPA was executed, Regulations section 2268 provided: "*No collateral agreements* modifying the obligation of either the insured or the insurer shall be made unless attached to and made a part of the policy . . . ." (Italics added.) In 2016, this Regulations section was amended to delete the reference to "collateral agreements" and instead state: "An insurer shall not use a policy form, endorsement form, *or ancillary agreement* except those filed and approved by the Commissioner in accordance with these regulations." (Regs., § 2268, subd. (b), italics added.) The Regulations were also amended to define an "Ancillary agreement" to include a "dispute resolution agreement[]." (Regs., § 2250, subd. (f).)

In this case, Applied (and/or its subsidiary) filed the CIC guaranteed-cost policies with the Insurance Commissioner and the Workers Compensation Insurance Rating Bureau (Rating Bureau). These policies did not require arbitration or contain a

22

delegation clause, and instead provided that the insured had the right to appeal CIC's classification and rating decisions to administrative agencies under applicable statutory procedures (§§ 11737, 11753.1).

Shortly after, AUCRA (another one of Applied's wholly-owned subsidiaries) entered into the contractually-required RPA with Nielsen that changed many of the CIC policy terms, and for the first time included the broad arbitration provision requiring all disputes to be submitted to arbitration (including the enforceability of the arbitration clause), and arbitration proceedings to be conducted in the British Virgin Islands before "disinterested" insurance executives. The Insurance Commissioner had no opportunity to consider or evaluate these arbitration provisions.

In *Shasta Linen*, the Insurance Commissioner found the RPA between Shasta Linen and AUCRA was a "collateral agreement" within the meaning of Regulations section 2268 because it modified and supplanted the terms of the CIC policies and therefore it should have been filed with, and approved by, the Insurance Department before it became effective. (*Shasta Linen*, at pp. 1, 46, 53, 58.) The Insurance Commissioner also found the failure to do so rendered the RPA void as a matter of law. (*Id.* at p. 65.) The Insurance Commissioner emphasized section 11658's mandatory language that an unfiled policy or endorsement " '*shall* not be issued by an insurer' " and that "issuing an unapproved policy or endorsement 'is *unlawful*.' " (*Shasta Linen*, at p. 65, italics added.)

The Insurance Commissioner also observed:

23

"By its own admission [Applied] designed EquityComp and the RPA to circumvent workers' compensation policy. It would defeat the statutory purpose to allow CIC to bypass the governmental review process by simply waiting until after the insurance policy has gone into effect to introduce additional or modified terms to its insurance program. Workers' compensation insurance is mandatory and California employers expect the statute's protection. CIC knew of the review and pre-approval process and deliberately ignored that process with regard to the RPA. . . .

"[T]he legal requirement for modifying any workers' compensation insurance obligation is to endorse the agreement to the insurance policy. This is done by filing the agreement with the [Rating Bureau], which in turn will file it with the Insurance Commissioner, and endorse it to the insurance policy after the requisite time or approval. Unfiled side agreements are prohibited and shall not be used without complying with these requirements; otherwise, they are not permitted in this state and are void as a matter of law." (*Shasta Linen*, at pp. 66-67, fns. omitted.)

Although *Shasta Linen* pertained primarily to the validity of the entire RPA agreement, the Insurance Commissioner also considered the RPA's arbitration provisions. The Insurance Commissioner found the RPA's arbitration clause was "intended to supersede [the dispute resolution provisions] of the [CIC] guaranteed cost policy" and the arbitration clause substantially modified these CIC provisions. (*Shasta Linen*, at p. 56.) The Insurance Commissioner found that Regulations section 2268 was "clear on its face" that "unendorsed side agreements are prohibited" and an "arbitration obligation" comes within the definition of a "side agreement" that must be filed before it is effective. (*Shasta Linen*, at p. 43.)

24

B. *Filing Required for RPA's Delegation Clause and Arbitration Agreement*

The RPA considered in *Shasta Linen* was essentially identical to the RPA issued to Nielsen. Although we are not bound by the *Shasta Linen* decision (*Yamaha Corp. of America v. State Board of Equalization* (1998) 19 Cal.4th 1, 7-8), we find its analysis persuasive on the prohibition of unfiled "collateral" or "side-agreements." Under the plain language of section 11658 and Regulations section 2268, defendants were required to file the delegation clause and arbitration provision with the Insurance Commissioner because these provisions were collateral side agreements that materially modified the earlier approved CIC policies.[4]

Defendants contend the delegation clause and arbitration requirement contained in the RPA were not subject to the filing requirement because AUCRA is not an "insurer"; the RPA is not a workers' compensation policy; and the RPA did not "modify" the CIC issued policies. The Insurance Commissioner rejected identical arguments. After carefully reviewing the terms of Shasta Linen's RPA, the Insurance Commissioner found that "it is clear the RPA's dispute resolution . . . provisions are meant to replace those of [the CIC policies]" and that the "affiliated entities" (Applied,

---

[4]     The 2016 amendments to Regulations sections 2268 and 2250, subdivision (f) specifically require ancillary agreements, including dispute resolution provisions, to be filed with the Insurance Commissioner. Although these amendments are not expressly applicable here (as the RPA was executed earlier) and there is no information showing the reason for the amendment, we agree with Nielsen's contention that these amendments appeared to be clarifications, rather than substantive changes, to the applicable regulations.

25

AUCRA, and CIC) were "so enmeshed" and "intertwined" that they should be considered together in determining whether the RPA constitutes a modification of the CIC policies. (*Shasta Linen*, at pp. 57, 49.)

The record here supports those findings. The RPA expressly pertains to Nielsen's workers' compensation coverage and states that it "represents the entire understanding . . . between the parties with respect to the subject matter hereof and supersedes all prior negotiations, proposals, letters of intent, correspondence and understandings relating to the subject matter hereof." The RPA additionally states that its terms apply "to all payroll, premium, and losses occurring under the Policies . . . ." In materials provided to Nielsen, Applied stated that its EquityComp program (that includes the CIC policies and the RPA agreement) "is a seamlessly integrated package providing nationwide workers' compensation coverage . . . ." Based on this evidence, we are unpersuaded by defendants' attempt to recharacterize their integrated EquityComp program to suggest that the statutory filing requirements should not apply.

We likewise find unhelpful defendants' argument that the added arbitration provision was not an "endorsement" or a "collateral" agreement under applicable law. (§ 11658; Regs., § 2268.) An endorsement "is an amendment to or modification of an existing policy of insurance" that " 'may alter or vary any term or condition of the policy.' " (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 451, 450.) A collateral agreement is a "secondary," "accompanying," or "auxiliary" agreement. (Random House Dict. of the English Language (2d. Unabridged ed. 1987) p. 403, col.

26

2.) As found by the Insurance Commissioner, the RPA's arbitration provision and delegation clause are endorsements and/or collateral agreements to the CIC policies because they relate to and materially alter the dispute resolution provisions in the earlier approved policy. (See *American Zurich Ins. Co. v. Country Villa Service Corp.* (C.D. Cal. 2015) 2015 WL 4163008, *5-6 (*American Zurich*).)

Defendants contend the RPA was not an "endorsement" because it was issued by AUCRA rather than CIC. Defendants rely on authority which they say describe an endorsement as a modification to the existing insurance contract. (See e.g. *Aerojet-General Corp. v. Transport Indem. Co.* (1997) 17 Cal.4th 38, 50, fn. 4; *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1463; *Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.* (1989) 210 Cal.App.3d 484, 496-497.) Those decisions are unhelpful because the courts were not presented with an insurance arrangement similar to here that *required* the use of two policies, the second of which amends and/or supplants the first.

C. *Arbitration Clause and Delegation Provision are Unenforceable*

Having found that the arbitration and delegation provisions were prohibited because they were not properly filed with the Insurance Commissioner, we determine these provisions are unenforceable. Generally, " ' "a contract made in violation of a regulatory statute is void." ' " (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 70; see *Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 150; *American Zurich*, *supra*, 2015 WL 4163008, at p. *6.) Although there are exceptions to

27

this rule if the unenforceability would result in unjust enrichment, forfeiture, or other form of unfair outcome (see *Malek*, at pp. 70-71), none of these factual circumstances are present here.

Section 11658, subdivision (b) expressly states it is "unlawful" for an insurer to issue any policy or endorsement or form that is not approved by the Insurance Commissioner, and the regulations implementing this law made clear that collateral agreements must be filed to be effective. (See Regs., § 2268.) These prohibitions would have no meaning if the insurer could enforce contracts despite having violated the disclosure and approval requirements. Allowing the insurer to make material modifications to the filed and approved dispute resolution mechanism without the knowledge of the Rating Bureau or the Insurance Commissioner would effectively remove any regulatory oversight of this process.

In California, workers' compensation insurance (or an adequate substitute) is mandatory, and the Insurance Commissioner is charged with closely scrutinizing insurance plans to protect both workers and their employers. (See *American Zurich*, *supra*, 2015 WL 4173009, at p. *17.) To accomplish this objective, the Legislature mandated that the Commissioner have full access to insurance information through mandatory filing requirements. (Regs., § 2268.) It follows that a violation of these requirements prevents crucial regulatory oversight and thus renders the unfiled agreement unlawful and void as a matter of law.

Defendants contend the arbitration provisions were not void and unenforceable because section 11658 and Regulations section 2268 do not specifically provide for this remedy, citing *Gonzales v. Concord Gardens Mobile Home Park, Ltd.* (1979) 90 Cal.App.3d 871.) In *Gonzales*, a building contractor violated a statute requiring the contractor to give a notice describing lien laws to a client (a homeowners' association) before starting work. (*Id.* at pp. 873-874.) When the contractor sued the homeowners' association for payment, the association argued the contractor had forfeited his rights to compensation by failing to provide this notice. (*Ibid.*) The court disagreed, emphasizing that the association's argument would impose "a forfeiture upon the contractor," which is disfavored. (*Id.* at p. 873.) The court also noted that because the statute did not include a penalty for noncompliance, and another provision in the contractor's license law expressly required a forfeiture (for working without a license), the maxim of " 'expressio unius est exclusio alterius' " applied to support a conclusion that no forfeiture was required for the violation of the lien law notice. (*Id.* at p. 874.)

This case is distinguishable. First, by not enforcing the unfiled delegation and arbitration provisions, there is no forfeiture. The parties will still have their day in court, and all parties will have the opportunity to present evidence, arguments, and defenses. Second, unlike the statutory notice requirement at issue in *Gonzales*, the statutes here specifically provide that an agreement that has not been appropriately filed is "unlawful." (§ 11658, subd. (b).)

29

Relying on section 11658.5, defendants contend the Legislature specifically rejected the rule that an unfiled arbitration or delegation clause is void as a matter of law. Section 11658.5 states in relevant part:

"(a)(1) An insurer that intends to use a dispute resolution or arbitration agreement to resolve disputes arising in California out of a workers' compensation insurance policy or endorsement issued to a California employer shall disclose to the employer, contemporaneously with any written quote that offers to provide insurance coverage, that choice of law and choice of venue or forum may be a jurisdiction other than California and that these terms are negotiable between the insurer and the employer. The disclosure shall be signed by the employer as evidence of receipt where the employer accepts the offer of coverage from that insurer.

"(2) After compliance with paragraph (1), a dispute resolution or arbitration agreement may be negotiated by the insurer and the employer before any dispute arises.

"(b) Nothing in this section is intended to interfere with any authority granted to the Insurance Commissioner under current law.

"(c) Failure by the insurer to observe the requirements of subdivision (a) shall result in a default to California as the choice of law and forum for resolution of disputes arising in California."

Defendants contend this statute shows "the Legislature knows how to impose penalties for non-compliance with statutory requirements, and could have included a provision rendering all unfiled arbitration agreements void if that were the Legislature's intention. Because it did not do so, this penalty may not be inferred."

The argument is unpersuasive. Based on the statute's plain language, it is apparent the Legislature enacted section 11658.5 in 2011 to address a specific issue—the circumstances when an insurance contract designates the controlling law or the

30

forum/venue to be a jurisdiction other than California. The Legislature did not prohibit these terms, but wanted to ensure employers were fully informed of the existence and consequences of such provisions. The statute thus requires that the insured be made aware of these extra-territorial provisions, be informed that they are negotiable, and sign a disclosure form "as evidence of" the receipt of this information. (§ 11658.5, subd. (a)(1).)

In the proceedings below, Nielsen did not challenge the choice-of-law or forum/venue provisions; it asserted that the delegation and arbitration clause are unenforceable because they were not filed and approved by the Insurance Department as required under section 11658 and Regulations section 2268. Because section 11658.5 does not concern or address the filing requirement issue, it does not govern the remedies for an insurer's intentional failure to file and obtain approval of a modified dispute resolution provision.

Defendants rely on legislative history materials underlying section 11658.5. However, on the issue before us (whether the unfiled arbitration provision is enforceable), section 11658 and Regulations section 2268 are clear and unambiguous, and therefore resort to legislative history regarding a separate code section is inappropriate. (See *Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.)

Moreover, on our review of the proffered committee reports and the evolution of the statutory language, we do not discern any clear intent to eliminate or modify the filing requirement for endorsements or collateral agreements as it pertains to arbitration-

31

related provisions or to limit the remedies for an *unfiled* arbitration agreement. The proposed bill that was eventually enacted as section 11658.5 changed many times and its final language appears to have been the result of a compromise. Because (as here) a bill's committee and floor analysis reports are often fragmented and unclear, "the wisest course is to rely on legislative history only when that history itself is unambiguous." (*J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1578, fn. omitted.)

Under this principle, the legislative materials relating to section 11658.5 do not support that the Legislature was intending to create rules applicable to section 11658's filing requirements with respect to an arbitration agreement or a delegation clause. This is particularly true given the recent regulatory clarification that arbitration agreements must be filed and approved under section 11658 and Regulations section 2268. (See Regs., § 2268 (as amended 2016), § 2250, subd. (f).) Defendants do not challenge the validity of this amendment or suggest it is inconsistent with section 11658.5.

We also find unhelpful defendants' reliance on decisions reached by courts interpreting other states' insurance statutes. (See e.g. *McCullough Transfer Co. v. Virginia Sur. Co.* (6th Cir. 1954) 213 F.2d 440, 442; *Ritter v. Shotwell* (1964) 63 Wash. 2d 601, 606-607 [388 P.2d 527].) These statutes are different from here, and none of these decisions involved the question whether an unfiled arbitration provision is enforceable under California law.

Based on our conclusion, we do not reach Nielsen's alternate argument (not raised below) that the FAA is reverse-preempted under the McCarran-Ferguson Act (15 U.S.C. §§ 1011-1015.)  (See *Citizens of Humanity*, *LLC v. Applied Underwriters*, *Inc.* (2017) 17 Cal.App.5th 806, 812-821; *Monarch Consulting*, *supra*, 26 N.Y.3d at pp. 670-674.)[5]

## DISPOSITION

Order affirmed.  Appellants to bear respondents' costs on appeal.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

---

[5]    We emphasize that in resolving the parties' contentions on the "who decides" and the arbitration/delegation clause enforceability issues, we base our determinations solely on the limited factual record presented in the motion to compel proceedings.  These determinations do not preclude the parties from litigating the merits of Nielsen's causes of action and requested relief at trial based on a more complete evidentiary record.