Filed 7/31/25  McCoy v. Fleetwood Aluminum Products CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK MCCOY, | D084305 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CVRI2205224) |
| FLEETWOOD ALUMINUM PRODUCTS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, Eric A. Keen, Judge.  Reversed and remanded with directions.

Greenberg Traurig, Gregory A. Nyles, Karin L. Bohmholdt and Hannah B. Shanks-Parkin, for Defendant and Appellant.

Godes & Preis, Joseph M. Preis and Oliver B. Dreger, for Plaintiff and Respondent.

Plaintiff Mark McCoy sued defendant Fleetwood Aluminum Products, Inc. (Fleetwood) in superior court to access certain company documents in his capacity as a shareholder and director. Years earlier, when he worked for Fleetwood, McCoy signed an employee arbitration agreement that generally requires the parties to submit their disputes to binding arbitration. Fleetwood filed a motion to compel arbitration, which the trial court denied after concluding that McCoy's dispute was not arbitrable because it was unrelated to his employment.

Fleetwood appeals, contending that the parties stipulated in the agreement that the arbitrator—not the court—is to decide the threshold question of whether a dispute must be arbitrated. We agree. We also conclude that the arbitrator must resolve McCoy's additional argument that Fleetwood's delay in filing its motion constitutes a waiver of the right to compel arbitration. Accordingly, we reverse the order denying Fleetwood's motion and remand with instructions to refer the case to arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Arbitration Agreement*

Fleetwood is a California-based business that holds itself out as an industry leader in the manufacture of custom, high-end aluminum windows and doors. McCoy signed the arbitration agreement (Agreement) in 2018 when he was Fleetwood's chief operating officer and general manager. Titled a "California Employee Arbitration Agreement," it was entered into "in consideration of [McCoy's] employment and/or continued employment."

For his part, McCoy agreed that "[e]xcept as set forth in paragraph 5 below, . . . any claim you may have against the Company . . . or the Company . . . may have against you shall be submitted to and determined exclusively . . . by a single neutral arbitrator through to final and binding arbitration."

2

The claims subject to arbitration were defined as "Claims" and specifically included "any dispute arising out of or relating to the interpretation or application of this Agreement, including the enforceability, revocability, or validity of this Agreement." The parties expressly "delegate[d] authority to decide those issues solely to the arbitrator." A later paragraph added that "[t]he arbitrator alone and not a court shall have jurisdiction to decide his or her jurisdiction, any questions as to the arbitrability of Claims, whether an agreement to arbitrate exists and is valid, and whether the agreement to arbitrate covers the dispute in question."

Excluded from the arbitrable "Claims" were the exceptions identified in paragraph 5. As relevant here, one exception dealt with a party's right to seek certain types of relief. By its terms, this exception did not prohibit any party from going to court and "applying for any preliminary or injunctive remedies available under applicable laws for any purpose."

## B.   *The Litigation*

By 2022, McCoy had become Fleetwood's president and CEO, in addition to being a director and owner of just over 12 percent of the company's shares of stock. Citing various alleged acts of malfeasance by McCoy, in February 2022, the other Fleetwood directors purported to remove him as a director and terminate his employment. McCoy believes that the board did not follow Fleetwood's bylaws in taking these actions, and as a result, his status with the company had not changed. Consequently, he filed multiple lawsuits against Fleetwood.

In November 2022, McCoy initiated the litigation that underlies this appeal. His operative complaint alleges causes of action under Corporations Code sections 1601 and 1602, which require companies to make certain documents available to shareholders and directors, respectively (the

3

documents case).  In January 2023, McCoy filed a second suit to assert individual and derivative causes of action related to the termination of his employment and his removal from the board (the employment case).

The merits of the documents case were not litigated in the trial court. In January 2023, McCoy filed an opposed, but as of yet unresolved, motion to designate it as "related" to the employment case.  In March 2023, Fleetwood answered McCoy's complaint and filed an opposed motion for a protective order.  Fleetwood filed a case management statement in May 2023, participated in a court-ordered mediation in June 2023, and attended a trial setting conference in January 2024 during which trial was scheduled for June 2024.  The parties met and conferred a handful of times over the scope of McCoy's case and potential discovery, but they neither conducted formal discovery nor filed dispositive motions.

## C.     *The Motion to Compel Arbitration*

In February 2024, Fleetwood filed its motion to compel arbitration in the documents case.  To that point, Fleetwood had not mentioned the potential filing of this motion either to McCoy or the trial court.  Fleetwood argued that the Agreement contained a "delegation clause" reserving "threshold questions of arbitrability" for the arbitrator, and thus he or she was to decide in the first instance whether McCoy's dispute must be arbitrated.  But even if the court were to decide the issue of arbitrability, Fleetwood maintained that the Agreement covered McCoy's causes of action. McCoy disputed that his suit fell under the Agreement and that, in any event, Fleetwood waived the right to compel arbitration because it unreasonably delayed filing its motion.

The trial court denied Fleetwood's motion on grounds not argued by McCoy.  In the court's view, the dispute in the documents case was not

4

employment related. Citing the Agreement's title— "California *Employee* Arbitration Agreement"—and its language stating that it covered "any dispute related to your employment or the termination of your employment," the court concluded that McCoy was "seeking to enforce his director and shareholder rights, which, strictly speaking, have nothing to do with his employment. Therefore, there is no valid agreement to arbitrate these claims." (Italics added.) As a result, the court did not address the parties' arguments concerning either the nature of the relief McCoy sought or whether the right to compel arbitration has been waived. Fleetwood timely appealed the order denying its motion.[1]

## DISCUSSION

### A. *The parties delegated the threshold question of arbitrability to the arbitrator.*

"[A] 'threshold question . . . presented by every motion or petition to compel arbitration' is 'whether the parties' dispute falls within the scope of that agreement.' " (*Mondragon v. Sunrun, Inc.* (2024) 101 Cal.App.5th 592, 601 (*Mondragon*).) The main issue before us is who was authorized to answer this question here—the arbitrator or the court? As a general matter, " 'courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about "arbitrability," ' including ' "whether an arbitration clause in a

---

[1] "An immediate appeal lies from the denial of a petition to compel arbitration." (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1711; Code Civ. Proc. § 1294, subd. (a).) Although "the perfecting of such an appeal shall not automatically stay any proceedings in the trial court during the pendency of the appeal" (Code Civ. Proc. § 1294, subd. (a)), we understand that the proceedings in this case are currently stayed.

5

concededly binding contract applies to a particular type of controversy." ' "
(*Id*. at p. 603.)

At the same time, the law is clear that parties can " 'agree to delegate authority to the arbitrator to decide arbitrability' " and that such a delegation is enforceable if their intent to do so is " ' "clear and unmistakable." ' " (*Mondragon*, *supra*, 101 Cal.App.5th at p. 602.)  Here, McCoy and Fleetwood do not dispute that the Agreement contains such delegation language.  Yet they disagree on whether there was a clear and unmistakable delegation of arbitrability over McCoy's specific causes of action.  Fleetwood argues that the delegation clause and other provisions of the Agreement show that the parties clearly and unmistakably reserved *all* questions of arbitrability to the arbitrator.  McCoy attacks the issue from a different angle.  Because his lawsuit seeks an order requiring Fleetwood to make certain records available to him, he contends that his suit effectively seeks injunctive relief.  In McCoy's view, there was no need to refer the case to arbitration for an arbitrability determination because paragraph 5 of the Agreement specifically exempts actions seeking injunctive relief.

" 'We review an order denying a motion to compel arbitration based on findings of fact for substantial evidence.' " (*Arzate v. ACE American Ins. Co.* (2025) 108 Cal.App.5th 1191, 1198.)  But where, as here, the relevant facts are undisputed, " 'we review the denial of a motion to compel arbitration de novo.  [Citations.]  Likewise, we independently review the order if the trial court's denial rests solely on a question of law.' " (*Id.* at p. 1199.)  " 'An arbitration agreement is governed by contract law.  It is construed like other contracts to give effect to the intention of the parties and the ordinary rules of contract interpretation apply.' " (*Ibid.*)

6

There are two provisions in the Agreement that reflect the parties' clear intent to refer questions of arbitrability to the arbitrator for decision. Paragraph 2 states that "[t]he claims that are to be arbitrated under this Agreement are any claims that arise between you and the company . . . *except as excluded by this Agreement in paragraph 5 below* (the 'Claims')."[2] (Italics added.) These arbitrable "Claims" include "any dispute relating to your employment or the termination of your employment with the company" as well as "all other employment-related claims." But they also include "any dispute arising out of or relating to the interpretation or application of this Agreement, including the enforceability, revocability, or validity of this Agreement, and the parties delegate authority to decide those issues solely to the arbitrator." Paragraph 6 goes on to specify that "[t]he arbitrator alone and not a court shall have jurisdiction to decide his or her jurisdiction, any questions as to the arbitrability of Claims, whether an agreement to arbitrate exists and is valid, and whether the agreement to arbitrate covers the dispute in question."

We have little trouble concluding that this language establishes the parties' clear and unmistakable intent to send to the arbitrator all questions of arbitrability, as it is materially identical to delegation language other courts have determined establish this intent. (See, e.g., *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892 ["agree to arbitrate all disputes, claims and controversies arising out of or relating to . . . (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section 5 [the 'Arbitration of Disputes'

---

[2] From this point forward, we adopt the Agreement's nomenclature of "Claims" and "claims" to identify the arbitrable and nonarbitrable claims, respectively.

section]" was a clear and unmistakable delegation of questions of arbitrability to arbitrator]; see also *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 [same for "[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement"]; *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 242 [same for " '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement' "].)

Notably, McCoy does not contend that this delegation language is any way ambiguous. Where the parties have clearly delegated arbitrability questions to the arbitrator, it is not the court's role to make a preliminary determination as to whether the Agreement clearly excludes the dispute or whether the argument in favor of arbitration is "wholly groundless." (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) 586 U.S. 63, 65.) Addressing questions of this nature are the responsibility of the arbitrator.

Focusing on the capitalized term "Claims" in the Agreement, McCoy suggests that the arbitrator's jurisdiction only extends to "Claims," and determining whether the particular cause of action is an arbitrable "Claim" requires a preliminary determination by the court.[3] Noting that paragraph 2 refers to paragraph 5 as identifying the nonarbitrable "claims," McCoy relies on language indicating that the "Agreement does not prohibit [a party] from . . . applying for any preliminary or injunctive remedies available under applicable laws for any purpose."

---

[3] McCoy has not chosen to adopt the trial court's rationale on appeal. Even if he had, the question of whether the Agreement covers only employment-related "Claims" would need to be decided by the arbitrator in the first instance.

The fact that certain of the delegation language uses the defined term "Claims" does not make the Agreement susceptible to the interpretation that the court has a proper role in deciding questions of arbitrability. Two of the clearest statements on this topic appear in paragraph 6: "The arbitrator alone and not a court shall have jurisdiction to decide *his or her jurisdiction* . . . and *whether the agreement to arbitrate covers the dispute in question.*" (Italics added.) Neither of these statements refers to "Claims."

We therefore need not decide whether McCoy's suit is really seeking injunctive relief, as he contends, or whether the language he cites from paragraph 5 would preclude arbitration of his causes of action if he were.[4] Paragraphs 2 and 6 of the Agreement make clear that regardless of how McCoy describes his case, he agreed that the arbitrator has sole authority to determine the threshold issue of whether it must be arbitrated. Thus, we must remand this case with instructions to submit this case to arbitration in accordance with the parties' Agreement.

**B.** ***The question of Fleetwood's waiver of the right to compel arbitration must also be referred to the arbitrator.***

McCoy raises the alternative argument that Fleetwood waived the right to compel arbitration because it unreasonably delayed filing its motion. In September 2023, Fleetwood's attorneys discovered the agreement McCoy had signed. In that same month, and after extensive litigation on the merits of McCoy's employment causes of actions, Fleetwood successfully compelled

---

[4] McCoy's complaint makes no mention of injunctive relief, nor has he subsequently applied for any. As for his reading of paragraph 5, under California law a party to an arbitration agreement may apply to the superior court for "provisional" remedies including preliminary injunctive relief if necessary to safeguard the ultimate right to an arbitration award. (Code Civ. Proc. § 1281.8, subds. (a)(3), (b).)

9

his individual employment causes of action to arbitration. McCoy points to Fleetwood's several-month delay in filing the same motion in the documents case as constituting a waiver of its right to compel arbitration.[5] Fleetwood counters that its actions were not inconsistent with a desire to arbitrate the documents case because its merits had not been litigated. It also points out that as to questions of enforcement, the agreement specifies that the Federal Arbitration Act applies, and under that authority, arbitration is generally favored.[6]

The right to compel arbitration arises from contract, and as with other contractual rights, the enforcement of this right is subject to waiver by failure to timely assert it. (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 569; see also *Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043.) When a party who has agreed federal law governs the enforcement of an arbitration agreement contends that a delay in moving to compel constitutes a waiver, "where the delay is unrelated to the litigation process, 'it is improper for the judge to decide this issue.'" (*Omar v. Ralphs*

[5] McCoy requests that we take judicial notice of two declarations filed in the employment case indicating that other employees also signed the same arbitration agreement at the same time, facts he contends support his waiver argument. Because we do not reach the merits of this argument, his request is denied.

[6] The choice-of-law provision in the Agreement provides that "[t]he interpretation, construction and performance of this agreement will be governed by the laws of the state of California that is [*sic*] applicable to agreements made and to be performed in California, except that questions concerning the enforceability of this Agreement shall be decided by the arbitrator pursuant to the Federal Arbitration Act." It is appropriate for parties to stipulate to a particular legal framework in an arbitration agreement rather than simply have either California or federal law apply to all issues. (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 345–348.)

*Grocery Co.* (2004) 118 Cal.App.4th 955, 963.)  Because McCoy does not attribute Fleetwood's delay in moving to compel arbitration to its litigation conduct in the documents case, the issue of waiver, too, must be decided by the arbitrator in the first instance.[7]

## DISPOSITION

The order denying Fleetwood's motion to compel arbitration is reversed. The matter is remanded to the trial court with instructions to submit this case to arbitration.  Fleetwood shall recover its costs on appeal.

DATO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

---

[7]    McCoy also urges us to factor into the waiver analysis Fleetwood's litigation conduct in the employment case, arguing that this conduct is inconsistent with a desire to arbitrate the documents case.  This argument is forfeited because McCoy fails to identify any authority for the principle that litigation conduct in one case bears on whether the right to compel arbitration in another case has been waived.  (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379 [" ' " 'review is limited to issues which have been adequately raised and briefed' " ' "].)  In any event, cutting against McCoy's argument is that the judge presiding over the employment case sent his individual causes of action to arbitration *despite* that they had been heavily litigated.

11